**PETROLANE INCORPORATED,** a California Corporation, Plaintiff,

v.

**UNITED STATES of America, DEPARTMENT OF ENERGY and James R. Schlesinger, as Secretary of the Department of Energy, Defendants.**

No. CV 78–0441–AAH.

United States District Court,
C. D. California.

June 15, 1978.

**116**

Gibson, Dunn & Crutcher by Theodore B. Olson, Los Angeles, Cal., and Cleary, Gottlieb, Steen & Hamilton by Kenneth L. Bachman, Jr., Washington, D. C., for plaintiff.

United States Dept. of Justice by Richard A. Sauber, Washington, D. C., for defendants.

## DECISION AND ORDERS

HAUK, District Judge.

This matter has come on before the Court upon plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents, and Government defendants' Motion For Protective Order. The case involves the determination, application, and constitutionality of rules and regulations of the United States Department of Energy with respect to plaintiff oil company's method of computing prices involving two conflicting systems of inventory calculation, popularly known as (1) the separate (regional) inventory method; and (2) the single (national) inventory method.

1. For convenience, this decision will refer collectively to the Department of Energy and its predecessor agencies involved in this dispute, including the Federal Energy Administration, the Federal Energy Office, and the Cost of Living Council, as "Department of Energy" or "the agency."

2. For general information regarding this economic program and the petroleum industry, see *Phillips Petroleum Co. v. Department of Energy*, 449 F.Supp. 760 (D.Del.1978); *Standard Oil Co. v. Department of Energy*, 453 F.Supp. 203 (N.D.Ohio 1978).

## I. Background

On August 17, 1973, as part of Phase IV of the federal government's Economic Stabilization Program, the Department of Energy[1] announced a regulatory system limiting the prices which a reseller or retailer of petroleum products could charge for those petroleum products.[2] *See* 38 Fed.Reg. 22536 (1973) (incorporating 6 C.F.R. § 150.-351 *et seq.*). Under these regulations, a reseller or retailer[3] of the covered products[4] could charge his "product cost" plus an "actual markup" cost, defined as the difference between the price charged on a specified base date (January 10, 1973) and the cost of his "inventory on that item" on that same base date. *See* 38 Fed.Reg. 22536, 22542 (incorporating 6 C.F.R. § 150.-359).

On September 28, 1973, the Department of Energy modified these regulations. Under the modified regulations, the agency limited the price a reseller could charge to its base date price (with the base date now specified as May 15, 1973) plus its "increased product costs" since that base date. *See* 38 Fed.Reg. 27290 (1973) (modifying 6 C.F.R. § 150.359). The regulations defined "increased products costs" as the difference between the weighted average cost of a "product in inventory" on May 15, 1973 and the weighted average cost of a "product in inventory" during the current month. *See id.* These rules and regulations did not, however, define "product in inventory" nor specify whether a reseller could use more than one inventory in calculating its costs.

Throughout this period, Petrolane, Inc., a "reseller" within the meaning of the perti-

3. The regulations in question define "reseller" and "retailer." 6 C.F.R. § 150.352 (1978). For convenience, this opinion will hereinafter refer to either a "reseller" or "retailer" as a "reseller."

4. The particular regulation involving Petrolane, found at 6 C.F.R. § 150.359 (1978) (38 Fed.Reg. 22536, 22542 (1973)), applied to petroleum products other than gasoline, No. 2 heating oil, and No. 2-D diesel fuel, as those products are defined in 6 C.F.R. § 150.352 (1978). The products included within § 150.359 are commonly called "covered products" or "special products."

nent regulations,[5] computed its "increased product costs" according to the separate inventory method. A reseller using this method calculates its increased product costs separately within each of its regional product inventories. This approach, which Petrolane asserts to be the customary, historical practice in the petroleum industry,[6] and which Petrolane alleges to have been condoned by agency officials during the period in question,[7] differs from the single inventory method, under which a reseller calculates its increased product costs on a nationwide inventory basis, aggregating all of its products into a single inventory pool.

On October 22, 1975, the Department of Energy published a proposed rule expressly authorizing the use by petroleum resellers of the separate (regional) inventory method. See 40 Fed.Reg. 49372 (1975). Numerous parties, including Petrolane, commented on this proposal. On May 10, 1976, the Department of Energy published a final regulation expressly authorizing the use of the separate (regional) inventory method as of May 1, 1976. See 41 Fed.Reg. 19110 (1976) (incorporating 10 C.F.R. § 212.92 et seq.). The agency also stated at that time, however, that the regulations in effect prior to the promulgation of these regulations effective May 1, 1976, required use of the single (national) inventory method. See id.

At the same time it published this decision, the Department of Energy suggested institution of a class exception proceeding to consider whether the decision regarding the use of the single (national) inventory method should apply retroactively. See 41 Fed.Reg. 19110 (1976). On May 28, 1976, the Department of Energy initiated such a class exception proceeding. See 41 Fed. Reg. 21935 (1976). On September 4, 1976, the Department of Energy denied the class exception. The agency conceded that the regulations applicable during the relevant

period (August 19, 1973–April 30, 1976) "did not expressly state that use of the single inventory method was required" but concluded nevertheless that the overall regulatory structure "suggested" that the single (national) inventory method had been required during that relevant period.

Petrolane then participated in an appeal filed by the National Liquified Petroleum-Gas Association (NLPGA) on December 10, 1976, on behalf of all propane marketers who operate more than one bulk plant and who have historically used the separate (regional) inventory method. On February 25, 1977, the Department of Energy excluded Petrolane and some other marketers operating more than one hundred bulk plants from the NLPGA appeal.

Also on December 10, 1976, Petrolane filed an individual appeal of the September 24, 1976, Department of Energy decision denying the proposed class exception. On June 14, 1977, the Department of Energy denied Petrolane's appeal in its entirety.

Petrolane then filed this action on January 31, 1978. Essentially, Petrolane argues that the Department of Energy's decision on May 15, 1976, that resellers of petroleum products should have calculated their prices from August 19, 1973 until April 30, 1976, in accordance with the single (national) inventory method is unlawful since no rule or regulation in force during that relevant period expressly required resellers to do so. More specifically, Petrolane contends that the agency's action violates the due process clause of the fifth amendment, the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq., the Administrative Procedure Act, 5 U.S.C. § 551 et seq., and the National Environmental Protection Act, 42 U.S.C. § 4321 et seq. Petrolane requests a declaratory judgment declaring that the chal-

---

5. See footnote 3 supra.

6. Plaintiff's Complaint, ¶ 10; Plaintiff's Memorandum of Points and Authorities In Opposition to Defendants' Motion for Protective Order, at 4 (filed May 12, 1978). The agency, however, apparently believed "that the majority of resellers and retailers are 'single-inventory' firms or

are so confined to a limited marketing area that there are no significant inventory cost differentials." 41 Fed.Reg. 19110, 19112 (1976).

7. Plaintiff's Complaint, ¶ 12. The Government has denied this allegation. Defendants' Answer, ¶ 12.

lenged position of the Department of Energy is unlawful, injunctive relief against threatened agency enforcement of that position, and certification of any constitutional issue to the Temporary Emergency Court of Appeals.

## II. Discovery Motions

Along with its complaint, Petrolane served on the Department of Energy a set of interrogatories and a request for production of documents. The Department, after receiving one extension of time to answer the interrogatories and requests for production of documents,[8] moved for a protective order directing that this discovery not be had. The plaintiff then moved for an order compelling the Department of Energy to respond to the interrogatories and request for production of documents.

The defendant Government contends that this Court's review of the actions and rulings of the Department of Energy is limited to judicial review of the administrative record on the issues involved in the case and that Petrolane's requested discovery is therefore irrelevant. In support of this argument, the Department of Energy cites the statute authorizing and governing review by this Court, Economic Stabilization Act of 1970, § 211(a), 12 U.S.C. § 1904 note,[9] and two Supreme Court decisions dealing with judicial review of administrative agen-

cy action, *Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam); *Citizens To Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In addition, the Department of Energy claims that the proposed discovery would be unduly burdensome.[10] In the alternative, the Department of Energy urges the Court to stay all discovery until the Court can rule on a summary judgment motion the Department of Energy intends to bring based on the administrative record.

Petrolane, on the other hand, views this case differently than does the Department of Energy. Petrolane argues that it is not challenging the May 15, 1976 rules and regulations but rather is seeking a judicial determination of the requirements of the rules and regulations in effect, if any, during the August 19, 1973–April 30, 1976 period, and that Petrolane is entitled to discover all materials relating to the Department of Energy's construction of the applicable rules and regulations during that relevant period. In support of its argument, Petrolane relies heavily on two recent decisions from the District of Delaware, *Getty Oil Co. v. Department of Energy,* No. 77–434 (D.Del. May 4, 1978) (Stapleton, J.); *Phillips Petroleum Co. v. Federal Energy Administration,* No. 77–90 etc. (D.Del. Sept.

---

8. Petrolane argues in its moving papers that the Department received this extension of time, filed on April 4, 1978, to "answer" the interrogatories and not to move for a protective order. *See, e. g.,* Notice of Motion for Order Compelling Answers to Interrogatories and for Production of Documents, at 2 (filed May 12, 1978). The Court expresses no view on the validity of this objection of the plaintiff.

9. "§ 211. Judicial review
"(a) The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection or in subsection (h) of this section affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by

any agency under this title) raised in any proceeding before such court. If in any such proceeding an issue by way of defense is raised based on the constitutionality of this title or the validity of agency action under this title, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of chapter 89 of title 28. United States Code [chapter 89 of Title 28].

10. The Department of Energy submitted an affidavit of a Department of Energy attorney, Dwight C. Alpern, estimating that answering the requested discovery would require examination of some 22,000 files and that searching those files and duplicating those deemed relevant would involve 20,700 manhours. Affidavit of Dwight C. Alpern, attached to Defendants' Motion for Protective Order (filed May 2, 1978).

7, 1977) (Latchum, J.).[11] With respect to the Government's argument about the burdensome nature of the discovery, Petrolane argues that the Department of Energy has not specified which interrogatories or requests for production of documents are burdensome and further argues that the agency has not objected to the discovery in the proper fashion. Petrolane also argues that a stay of discovery to allow the Department of Energy to move for summary judgment would be unjust in that Petrolane would be forced to fight the motion without having had the benefit of any discovery.

█ The Court agrees with and will follow the decisions of Judges Stapleton and Latchum in the *Getty Oil* and *Phillips Petroleum* cases. Following these decisions, the Court is constrained to hold that Petrolane currently is entitled to discovery limited to two issues.

First, Petrolane is entitled to discover any materials needed to complete the administrative record. *Getty Oil Co. v. Department of Energy,* No. 77–434 (D.Del. May 4, 1978) (typed opinion at 11–12).[12] Since the Department only produced the fairly voluminous record at the hearing on the parties' discovery motions, Petrolane has not yet had an opportunity to review the record to determine whether any inadequacies exist therein. Once Petrolane has done so, it may, in accord with the *Getty Oil* decision, request those materials needed to complete the administrative record of the Department of Energy actions involved here and the Department of Energy is hereby ordered to produce such materials forthwith.

Second, Petrolane is entitled to discover all materials relevant to the agency's contemporaneous construction of the rules, regulations, and requirements in force during the August 19, 1973–April 30, 1976 relevant period dealing with the separate (regional) inventory method and the single (national) inventory method. *Getty Oil Co. v. Department of Energy,* No. 77–434 (May 4, 1978) (typed opinion at 11–12); *Phillips Petroleum Co. v. Federal Energy Administration,* No. 77–90 etc. (D.Del. Sept. 4, 1977) (typed opinion at 4).[13] As for the scope of this discovery, the Court will follow the *Phillips* case; accordingly, the Department of Energy shall produce its "statements, internal memorandums, manuals, directives, and the like" forthwith to Petrolane.[14]

### III. Certification to the Temporary Emergency Court of Appeals

The statutes governing this Court's jurisdiction and the scope of this Court's review of the actions and decisions of the Department of Energy provide that, if the Court determines that a "substantial" constitutional issue exists, this Court "shall" certify such issue to the Temporary Emergency Court of Appeals. Economic Stabilization Act of 1970, as amended, § 211(c), 12 U.S.C. § 1904 note.[15] *See also* Department of En-

11. Judge Latchum has published other opinions in the same case. 435 F.Supp. 1239 (D.Del. August 11, 1977) (opinion re motion to dismiss or to stay); 435 F.Supp. 1234 (D.Del. June 27, 1977) (opinion re motion to transfer or to stay).

12. In the *Getty Oil* case, Judge Stapleton ruled as follows:
   Where there is to be a review on the record, the party seeking review and the Court have a right to a complete administrative record and, when a showing is made that it may not be complete, limited discovery is appropriate to resolve that question.

13. The *Standard Oil* litigation handled by Judge Manos illustrates, although in a slightly different context, the potential relevance of materials dealing with the agency's contemporaneous construction of the rules and regulations it enforces. *Standard Oil Co. v. Department of En-*

ergy, 453 F.Supp. 203 (N.D.Ohio 1978) (*Standard Oil II*); *Standard Oil Co. v. Federal Energy Administration,* 440 F.Supp. 328 (N.D.Ohio 1977) (*Standard Oil I*).

14. The Department of Energy attempted to distinguish the *Getty Oil* and *Phillips Petroleum* cases on the ground that those decisions did not involve a situation in which an administrative record exists, as one does here. The Court does not find this distinction meaningful, except to the extent that the requested materials are already contained in the administrative record; the Department of Energy need not turn over any such materials.

15. "(c) In any action commenced under this title in any district court of the United States in which the court determines that a substan-

ergy Organization Act, § 502(a), 42 U.S.C. § 7192;[16] Emergency Petroleum Allocation Act, as amended, § 5(a)(1), 15 U.S.C. § 754(a)(1).[17] *See generally Atlantic Richfield Co. v. Federal Energy Administration,* 429 F.Supp. 1052, 1061 (N.D.Cal.1976), *affirmed,* 556 F.2d 542 (Temp.Emer.Ct.App. 1977).

In this case the Department of Energy's statements and regulations of May 1, 1976, making the separate (regional) inventory method expressly permissible, but conclusively stating that, despite any prior express regulations or rules, the single (national) inventory method had been required during the August 19, 1973–April 30, 1976 period, despite the fact that plaintiff Petro-

lane had always used the separate (regional) inventory method and the alleged fact that Department of Energy officials had condoned the use of that method, are, due to their apparent retroactive nature and their internal inconsistencies, arbitrary, capricious, and unreasonable and in apparent violation of the due process clause of the fifth amendment.

■ By reason of this alleged and apparent arbitrary, capricious, and unreasonable nature of the actions of the Department of Energy which raise the issue of lack of due process under the fifth amendment to the United States Constitution, the Court hereby finds and determines that a substantial

---

tial constitutional issue exists, the court shall certify such issue to the Temporary Emergency Court of Appeals. Upon such certification, the Temporary Emergency Court of Appeals shall determine the appropriate manner of disposition which may include a determination that the entire action be sent to it for consideration or it may, on the issues certified, give binding instructions and remand the action to the certifying court for further disposition.

16. **§ 7192. Judicial review**
**Agency action**
    (a) Judicial review of agency action taken under any law the functions of which are vested by law in, or transferred or delegated to the Secretary, the Commission or any officer, employee, or component of the Department shall, notwithstanding, such vesting, transfer, or delegation, be made in the manner specified in or for such law.
**Review by district court of United States; removal**
    (b) Notwithstanding the amount in controversy, the district courts of the United States shall have exclusive original jurisdiction of all other cases or controversies arising exclusively under this chapter, or under rules, regulations, or orders issued exclusively thereunder, other than any actions taken to implement or enforce any rule, regulation, or order by any officer of a State or local government agency under this chapter, except that nothing in this section affects the power of any court of competent jurisdiction to consider, hear, and determine in any proceeding before it any issue raised by way of defense (other than a defense based on the unconstitutionality of this chapter or the validity of action taken by any agency under this chapter). If in any such proceeding an issue by way of defense is raised based on the unconstitutionality of this chapter or the validity of agency

action under this chapter, the case shall be subject to removal by either party to a district court of the United States in accordance with the applicable provisions of chapter 89 of Title 28. Cases or controversies arising under any rule, regulation, or order of any officer of a State or local government agency may be heard in either (A) any appropriate State court, or (B) without regard to the amount in controversy, the district courts of the United States.
**Litigation supervision by Attorney General**
    (c) Subject to the provisions of section 7171(i) of this title, and notwithstanding any other law, the litigation of the Department shall be subject to the supervision of the Attorney General pursuant to chapter 31 of Title 28. The Attorney General may authorize any attorney of the Department to conduct any civil litigation of the Department in any Federal court except the Supreme Court.

17. **§ 754. Administration and enforcement; delegation of authority; civil and criminal penalties**
    (a)(1) Except as provided in paragraph (2), (A) sections 205 through 207 and sections 209 through 211 of the Economic Stabilization Act of 1970 (as in effect on November 27, 1973) shall apply to the regulation promulgated under section 753(a) of this title, to any order under this chapter, and to any action taken by the President (or his delegate) under this chapter, as if such regulation had been promulgated, such order had been issued, or such action had been taken under the Economic Stabilization Act of 1970; and (B) section 212 (other than 212(b)) and 213 of such Act shall apply to functions under this chapter to the same extent such sections apply to functions under the Economic Stabilization Act of 1970.

constitutional issue exists [18] and does hereby certify that issue to the Temporary Emergency Court of Appeals.[19]

IV. Conclusion

The defendants' motion for a protective order is denied and the plaintiff's motion to compel is granted in part. The Court hereby certifies to the Temporary Emergency Court of Appeals the issue of whether the decision of the Department of Energy that the single (national) inventory method should have been used by resellers of petroleum products from August 19, 1973–April 30, 1976 in calculating their "increased product costs" amounts to a violation of the due process clause.

Let orders be entered accordingly forthwith as follows:

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ANSWER TO INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS AND DENYING GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

The Court finding that defendants have failed to show good cause for their Motion for a Protective Order; that defendants have failed to establish that the discovery sought by plaintiff would be unduly burdensome; that any burden upon defendants resulting from such discovery is outweighed by plaintiff's need therefor; that it would be inappropriate to stay plaintiff's discovery in anticipation of defendants' as yet unfiled motion for summary judgment; that plaintiff would require discovery in order to respond to any such motion by defendants and that the discovery sought by plaintiff as hereinafter limited is relevant to the subject matter of this litigation,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff's Motion to Compel Answers to Interrogatories and Production of Documents be and the same is hereby granted with the limitation that defendants need only respond at this time to each of plaintiff's Interrogatories and each of plaintiff's Requests for Production of Documents to the extent necessary (a) to provide to plaintiff a complete administrative record and to answer all Interrogatories relevant to defendants' administrative decisions and said administrative record; and (b) to produce all documents and answer all Interrogatories relevant to contemporaneous construction by the defendant agency and its predecessors of the regulations and purported regulatory requirement which are at issue in this litigation including, without limitation, all documents and all interrogatories relevant to defendants' conduct, statements, internal memoranda, manuals, directives and the like with respect to said purported regulations and purported regulatory requirement; and

Furthermore, although statutory claims are also involved in this litigation, the Court finds that the principal issue involved here is the constitutional question, not the issues of statutory interpretation and agency discretion. *See generally National Petroleum Refiners Ass'n v. Dunlop*, 486 F.2d 1388, 1390 (Temp.Emer.Ct. App.1973).

---

18. In this context, a constitutional issue is "substantial" if it is not plainly without merit and if no Supreme Court or Temporary Emergency Court of Appeals precedent exists. *See Atlantic Richfield Co. v. Federal Energy Administration*, 429 F.Supp. 1052, 1061 (N.D.Cal. 1976), *affirmed*, 556 F.2d 542 (Temp.Emer.Ct. App.1977); *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 420 F.Supp. 162, 169 (S.D.Ala. 1976); *Delaware Valley Apartment House Owners Ass'n v. United States*, 350 F.Supp. 1144, 1150 (E.D.Pa.1972), *affirmed*, 482 F.2d 1400 (Temp.Emer.Ct.App.1973). This Court does not believe that the plaintiff's due process claim is plainly without merit and has not found any binding precedent on the issue. Consequently, the Court must find that the constitutional issue is "substantial" as the courts have interpreted the statute authorizing certification to the Temporary Emergency Court of Appeals.

19. Following the authority of the decision of the Temporary Emergency Court of Appeals in the *National Petroleum Refiners Ass'n* case, the Court hereby certifies *only* the constitutional issue to the Temporary Emergency Court of Appeals, not the entire action. *See National Petroleum Refiners Ass'n v. Dunlop*, 486 F.2d 1388 (Temp.Emer.Ct.App.1973). The Temporary Emergency Court of Appeals must determine, in accordance with governing statutes and its own rules, how this litigation should now proceed. *See id.* at 1392 n.1.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the responses of defendants to the foregoing discovery shall be made, served and filed forthwith, but not later than twenty (20) days from the date of this Order.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that defendants' Motion for Protective Order be and the same hereby is DENIED.

ORDER CERTIFYING CONSTITUTIONAL ISSUE TO TEMPORARY EMERGENCY COURT OF APPEALS

The Court finding and determining that the enforcement, purported enforcement and attempted enforcement retroactively by the defendants against plaintiff of the so-called single (national) inventory method of calculating increased product costs under the price control regulations applicable to petroleum resellers for the period August 19, 1973 to May 1, 1976 appears to be unreasonable, capricious, arbitrary, and, therefore, unconstitutional as a violation of the Fifth Amendment to the Constitution of the United States; and further finding and determining that a substantial constitutional issue exists by reason of the foregoing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the foregoing constitutional issue shall be and hereby is certified to the Temporary Emergency Court of Appeals pursuant to U.S.C. Section 502(a) of the DEOA (42 U.S.C. § 7192), Section 5(a)(1) of the EPAA (15 U.S.C. § 754(a)(1)) and Section 211(c) of the ESA (12 U.S.C. § 1904 note).