**STATE OF ALASKA, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Cook Inlet Region, Inc., Intervenor.**

**No. 210–87L.**

United States Claims Court.

Aug. 11, 1988.

---

Elizabeth J. Barry, Anchorage, Alaska, atty. of record, for plaintiff.

Larry Martin Corcoran, Washington, D.C., with whom was Asst. Atty. Gen. Roger J. Marzulla, for defendant.

Stephen Kristovich, Los Angeles, Cal., atty. of record, for intervenor.

## MEMORANDUM ORDER

REGINALD W. GIBSON, Judge.

*Introduction*

Plaintiff, the State of Alaska, filed its initial complaint in this court on April 13, 1987, against the United States requesting: (i) recovery of at least $20,000,000 from the United States for improperly disbursing revenues from unitized [1] portions of federal oil and gas leases of public land in Alaska to native corporations not so entitled; (ii) declaratory relief determining the rights of Alaska to receive 90% of the mineral revenues arising from the aforementioned ar-

---

1. "A federal oil and gas unit is an area subject to an agreement or plan of development and operation for the recovery of oil and gas without regard to separate ownerships and for the allo- cation of costs and benefits as defined in the agreement or plan." Alaska's Amended Complaint, May 6, 1988, p. 5.

eas; and (iii) an injunction against future disbursements by the United States of such revenues to third parties not so entitled. Defendant, United States, answered plaintiff's original complaint on August 7, 1987. On August 19, 1987, the United States amended its answer and ventilated the necessity of including another party to this law suit, *i.e.*, the Cook Inlet Region, Inc. ("CIRI"), pursuant to RUSCC 24(a). Plaintiff responded to defendant's counterclaim and set-off on September 9, 1987 and March 8, 1988. CIRI's notice of motion (September 17, 1987) to intervene was allowed on October 7, 1987, and it answered Alaska's original complaint on October 7, 1987. Subsequently, on May 6, 1988, plaintiff submitted a first amended complaint, which reiterated its initial claims and also requested an additional $5,000,000 entitlement. On May 23, 1988, the United States and CIRI submitted memoranda opposing Alaska's motion to file a first amended complaint, and Alaska replied thereto on June 7, 1988.

Subject case is, therefore, currently before the court on the issue—whether plaintiff may amend its initial complaint. In the original complaint, Alaska alleged jurisdiction under 28 U.S.C. §§ 1491, 2201, and 2202 (1982). The amended complaint avers only 28 U.S.C. § 1491 (1982).

*Facts*

The territory of Alaska was admitted to statehood in 1959 pursuant to the Alaska Statehood Act, Pub.L. No. 85–508, 72 Stat. 339 (1959). The Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1606 (1982), describes the division of Alaska territory into 12 geographical native associations or corporations. In order to improve land management and to encourage development within the Cook Inlet Region, Inc., said native corporation, the United States, and Alaska settled specific claims, presently codified in 43 U.S.C. § 1611 (1982). Section 35 of the Mineral Leasing Act of 1920 (MLA) provides that Alaska shall receive 90% of revenue from public lands subject to a MLA lease in Alaska. 30 U.S.C. § 191. Yet, the ANCSA, 43 U.S.C. § 1613(g) (1982), asserts that:

In the event that the patent does not cover all of the land embraced within any such lease, contract, permit, right-of-way, or easement, the patentee shall only be entitled to the proportionate amount of the revenues reserved under such lease, contract, permit, right-of-way, or easement by the State or the United States which results from multiplying the total of such revenues by a fraction in which the numerator is the acreage of such lease, contract, permit, right-of-way, or easement which is included in the patent and the denominator is the total acreage contained in such lease, contract, permit, right-of-way, or easement.

In its amended complaint, Alaska asserts, *inter alia*, that the United States misapplied the aforementioned statutes resulting in misappropriating *to* native corporations over $25,000,000 which was rightfully due to Alaska. Alaska's Amended Complaint, May 6, 1988, p. 11.

*Contentions of the Parties*

*Defendant*

The United States objections to Alaska's motion to amend the complaint include the following contentions:

(1) Alaska inadequately identified the alleged contract claim breach, and thereby failed to comply with RUSCC 9(d) and RUSCC 9(h)(2) and (3);

(2) Alaska's claims, which solicit declaratory and injunctive relief, are Administrative Procedure Act, 5 U.S.C. § 551 (1982), claims, which are outside the U.S. Claims Court's jurisdiction; and

(3) Alaska fails to justify the need for the amended complaint.

*Intervenor*

CIRI's main arguments for opposing Alaska's right to amend the complaint are two-fold. First, CIRI claims that Alaska's grievances are legally deficient on their face. Second, it asserts that permitting Alaska to amend its complaint will prejudice CIRI as well as other native corporations and persons because potentially extensive discovery will further tie up funds in escrow.

*Issue*

The issue before this court for decision is—whether justice requires that Alaska, the plaintiff herein, be permitted to amend its complaint.

*Discussion*

As will be seen hereinafter, both case law and RUSCC 15(a) persuade this court to conclude that Alaska's Motion To File First Amended Complaint is meritorious. We conclude, therefore, that said motion must be granted because: (i) defendants will not be prejudiced; (ii) the amended complaint was not submitted late nor is it futile; (iii) the amended complaint is unambiguous and meets the standard of RUSCC 9(h)(2) and (3); (iv) Alaska's request for injunctive relief is subsumed within the state's monetary claim and, therefore, is within the court's jurisdiction; and (v) this is Alaska's *first* amended complaint.

Our threshold observation is that an overview of RUSCC 15(a) is utile prior to analysis of the parties' respective contentions concerning this issue. Pleadings are amended for numerous reasons including, *inter alia:* correcting weak claims or defenses; stating additional claims as well as changing the nature of grievances; and augmenting the amount of damages sought. *See,* 3 Moore's Federal Practice 15.08[3], at 55–63 (2d ed. Supp.1988). Further, parties may amend pleadings: on their own initiative before an answer is served or, if no response is permitted and no trial is scheduled, within 20 days of service. RUSCC 15(a). Otherwise, as in the case at bar, "a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires." Id.* (emphasis added).

Regarding a proper interpretation of Fed.R.Civ.P. 15(a),[2] this court, as in its *Effingham County Bd. of Educ. v. United States* decision, 9 Cl.Ct. 177 (1985), will focus on the following operative language set out in *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962):

In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—*the leave sought should, as the rules require, be "freely given."* Of course, the grant or denial of an opportunity to amend is within the discretion of the ... Court, *but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.*

(emphasis added).

Against this background, *i.e.,* to avoid abusing their discretion, courts may deny motions to amend pleadings only for legally sufficient reasons. *Id.* Generally, courts have granted motions to amend fairly liberally, while at the same time avoiding the constraint of formalistic pleadings. *Id., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Heyl & Patterson Intern. v. F.D. Rich Hous.,* 663 F.2d 419, 425 (3d Cir.1981); *Effingham,* 9 Cl.Ct. at 180. Thus, leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied. *Hess v. United States,* 210 Ct.Cl. 483, 537 F.2d 457, 461 (1976).

We now explicate courts' justifications for denying Rule 15(a) motions to amend complaints. First, concerning the crucial factor of prejudice—"the touchstone for the denial of an amendment"—a party must demonstrate that it will be: severely disadvantaged or incapable of presenting facts or evidence. *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission,* 573 F.2d 820, 823 (3d Cir. 1978). Prejudicial consequences also may arise if the party proposing the amendment introduces new legal theories which require the non-movant to conduct extensive re-

---

**2.** "[This] rule mirrors in all material particulars RUSCC 15(a)." *Effingham County Bd. of Educ.*

*v. United States,* 9 Cl.Ct. 177, 179 n. 3 (1985).

search shortly *before* trial. *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir.1986). In short, a showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint. *Howey v. United States,* 481 F.2d 1187, 1190 (9th Cir.1973); *Heyl & Patterson Intern.,* 663 F.2d at 425. That is to say, it is "the degree of prejudice to the adversary before granting or denying an amendment," rather than minute findings of hardship, that is probative of the issue. *Moore v. City of Paducah,* 790 F.2d 557, 561 (6th Cir.1986). *See, Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982).

■ In assessing the case at bar, in light of this legal framework, it appears that the United States will *not* be unduly burdened or substantially prejudiced if Alaska is permitted to amend its complaint, as it now seeks. While the United States avers that it will suffer a severe burden should the amendment be allowed, it fails to explicate what specific prospective hardships await it other than potentially extensive discovery. United States' Opposition Brief, May 23, 1988, at 6. Although additional discovery may arise if Alaska is permitted to amend its complaint, this prospective condition is distinguishable from the Fifth Circuit's denial of a defendant's motion to introduce a new issue with *trial being imminent,* which is not this case. *Nevels v. Ford Motor Co.,* 439 F.2d 251 (5th Cir.1971). In *Nevels,* the court determined that the plaintiff would suffer "undue prejudice" because of the nearness of trial, whereas in the case at bar, the United States may only be subject—if additional discovery is necessary—to comply with relevant discovery requests. If the United States believes that this additional discovery (should it arise) is annoying, embarrassing, oppressive, overburdening or expensive, the party may file a protective order as set out in RUSCC 26(c). Moreover, a trial date has not been scheduled in the case at bar. In *Effingham,* 9 Cl.Ct. at 180, "we conceive[d] this to merely constitute a vexing inconvenience rather than the visitation of measurable prejudice."

The intervenor, CIRI, also states that it will be prejudiced if the complaint is amended. CIRI's Opposition Brief, May 23, 1988, p. 6. It is ironic that CIRI should complain about the strain of additional discovery since plaintiff alleges that CIRI has been uncooperative during discovery. Alaska's Reply Brief to United States' and CIRI's Opposition To Motion To File First Amended Complaint, June 6, 1988, pp. 7–8. Similar to our analysis of the United States' allegations of potential prejudice if extensive discovery results from Alaska's amended complaint, CIRI's arguments are also scant and unconvincing.

■ Next, although mere delay, without some showing of prejudice, bad faith, or futility is insufficient to deny a motion to amend a complaint, *excessive* delay in certain circumstances can be a reason for such denial. *See, Foman,* 371 U.S. at 182, 83 S.Ct. at 230, and *Johnson,* 785 F.2d at 510. Likewise, on this point, in the case at bar the United States' opposition to the motion to amend, based on an argument that it arrived 13 months *after* the original complaint, is also unconvincing. No credible or probative proof was proffered by the United States on Alaska's alleged deliberate tardiness; thus, justice requires that the court must rule to allow the amendment. Our ruling, in this regard, is consistent with case law supporting the proposition that "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (5th Cir.1981). Thus, whereas here, this court "lacks a 'substantial reason' to deny leave, its discretion 'is not broad enough to permit denial.' " *Jamieson by and through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985), *quoting Dussouy,* 660 F.2d at 598.

■ Where futility is proposed as a basis for denying amending a complaint, courts will discern whether a pleading is frivolous and insufficient on its face or has been adequately addressed in the prior complaint. *Johnson,* 785 F.2d at 510. In *Johnson,* the U.S. Court of Appeals for the Fourth Circuit reasoned that the complexity of determining the applicability of a state's statute, as construed by conflict-of-

law principles of another state, rendered the arguments to deny a motion to amend insufficient. There, it was not obvious on the face of the proposed amendment that the Connecticut Act does not apply. Similarly, the intricacy of the statutes discussed in the amended complaint here can hardly be construed by this court as lacking foundation to this dispute. Also, the amended complaint in *Johnson* contained additions and changes that were useful and non-repetitious.

So too, Alaska's amended complaint is not meritless on its face. Further, the proposed amended complaint explicates more clearly the complex facts and legal framework of this suit. Thus, Alaska must be permitted to amend its complaint because justice so requires.

Moreover, this court rejects defendant's allegations that Alaska's amended complaint is frivolous and futile, for the same reason that we stated in *Effingham*, 9 Cl.Ct. at 181:

> We do not read *Foman* [371 U.S. at 182, 83 S.Ct. at 230] to say that in passing on what *is* a "proper subject of relief" for purposes of Rule 15, we need reach the legal merits of the cause of action being added. Such a result would certainly be absurd given the pretrial status of the case at bar.

(emphasis in original). To underscore then, defendants have not persuaded the court that plaintiff should be prevented from amending its complaint based on allegations of futility.

More importantly, justification for allowance of the amended complaint can be said to stem from the common practice of allowing amendments, as here, when parties increase the amount of damages initially sought. So too then, Alaska's request for payment of an additional $5,000,000 over and above the $20,000,000 of revenue demanded in the original complaint falls within applicable precedent. *Compare* Alaska's Complaint, April 13, 1987, p. 7 *with* Alaska's Amended Complaint, May 6, 1988, p. 13.

■ The United States proposes that this court should deny Alaska's request to amend its complaint on the basis that plaintiff did not adequately explicate its reasons for the motion. United States' Opposition to Alaska's Motion To File First Amended Complaint, May 23, 1988, p. 6. However, here too, this defendant's arguments are unconvincing for multiple reasons. First, RUSCC 15(a) does not contain language which can be construed to require the movant to describe why additions or alterations to the complaint are necessary. Neither does the landmark case, *Foman*, discuss denying putative amended complaints merely because they fail to mention *why* changes are necessary. In addition, there is scant case law—if any—explicitly stating or implying that the movant on an amended complaint must list the circumstances surrounding any alterations to said document. Further, the cost and length of litigation would increase if parties were required to illuminate, with specificity, each modification in the amended complaint. In sum, the United States does not persuade this court to negate Alaska's request to amend the complaint solely because the plaintiff did not underscore its (Alaska's) reasons for amending the complaint.

Concerning the United States' allegations that the motion to amend the complaint should be denied because the document is "confusing and ambiguous," this court also disagrees. Given the complexity of this very significant case, in addition to the breadth of the interaction among the litigants, we find that Alaska has adequately complied with the minimum standard enunciated in RUSCC 8(a). Although RUSCC 8(a) does provide that, ideally, "a short and plain statement" is required, this multifacted case at bar has necessitated a more encompassing amended complaint than is often seen. Consequently, by said amendment, Alaska has abided by the threshold set out in *Conley*, 355 U.S. at 47, 78 S.Ct. at 102–03, articulating that the Fed.R.Civ. P. 8(a) requires plaintiff to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Although the United States may have varying interpretations of the circumstances surrounding this suit, as well as

case law and statutes relevant in resolving this matter, we find that Alaska has adequately and reasonably forewarned these defendants of its (Alaska's) grievances and the bases upon which they rest in this complicated action. *See also, Fielding v. Brebbia,* 399 F.2d 1003 (D.C.Cir.1968).

■ In addition to the foregoing, the United States also maintains that Count II (alleging that the United States misconstrued the Terms and Conditions for Land Consolidation and Management in Cook Inset Areas ("T & C")) and Count III (purporting that the United States breached the implied covenant of good faith and fair dealing of the T & C) of Alaska's amended complaint do not meet the standard set out in RUSCC 9(d) and RUSCC 9(h)(2), (3). United States' Opposition To Alaska's Motion To File Amended Complaint, May 23, 1988, pp. 2–4. RUSCC 9(d) and RUSCC 9(h)(2), (3) provide, in pertinent parts, as follows:

Rule 9. Pleading Special Matters.

&ast; &ast; &ast; &ast; &ast; &ast;

(d) Official Document or Act. In pleading an official document or official act it is sufficient to aver that the document was issued or the act done in compliance with law.

&ast; &ast; &ast; &ast; &ast; &ast;

(h) Special Matters Required in Complaint. The complaint shall include:

&ast; &ast; &ast; &ast; &ast; &ast;

(2) *Citations of Statutes, Regulations, Orders.* A clear citation of the Act of Congress, regulation of an executive department or agency, or Executive order of the President, where the claim is founded upon such an act, regulation, or order.

(3) *Contracts or Treaties.* If the claim is founded upon a contract ... with the United States, a description of the contract ... sufficient to identify it. In addition, the plaintiff shall plead the substance of those portions of the contract ... on which he relies or, at his election, annex to the complaint a copy of the contract ... indicating the provisions thereof on which he relies.

Specifically, at bar, the United States asserts that Alaska failed to identify the purported "contract" (T & C), its terms, and whether it was prescribed by law. United States' Opposition to Alaska's Motion to File Amended Complaint, May 23, 1988, p. 4. Yet, Alaska's amended complaint does identify relevant statutes, thereby substantially adhering to RUSCC 9(d). Alaska's Amended Complaint, May 6, 1988, pp. 1–2. With regard to Alaska's reference to the T & C as "a contract" and failure to cite relevant authorities including legislative history, S.Rep. No. 361, 94th Cong., 1st Sess. (1975), and H.R.Rep. No. 729, 94th Cong., 1st Sess. (1975), U.S.Code Cong. & Admin.News 1975, p. 2376, we find this omission is not an infraction sufficient to fall short of RUSCC 9(d) requirements. After all, Alaska's presentation of T & C was, indeed, "sufficient to aver that the document was issued or done in compliance with law." RUSCC 9(d). In sum, Alaska's amended complaint will be allowed because we find that the state sufficiently abides by RUSCC 9(d) requirements.

Although Alaska did not cite the portion of the T & C relating to contract implications, sufficient identification was given because *implied covenants* of the "contract" cannot be specifically cited. Rather, the document as a whole exhibits the implicit resolve of the agreement. Further, as RUSCC 9(h)(3) illustrates, the movant has the *option, i.e.,* "at his election," to determine whether to annex to the complaint a copy of the contract. Thus, for the reasons stated above, the United States falls short of convincing this court that Counts II and III of Alaska's amended complaint violate RUSCC 9(d) and RUSCC 9(h)(2), (3).

■ Next, the United States asserts that Counts IV and V of Alaska's amended complaint must be removed because they are Administrative Procedure Act claims, 5 U.S.C. § 702 (1982), and, as requests for declaratory and injunctive relief, are outside this court's jurisdiction. We also find said contentions to be meritless. Although, at first blush, a modicum of support for the United States' contentions can be found in *United States v. Testan,* 424 U.S. 392, 395, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)

("the Declaratory Judgment Act did not grant the Court of Claims authority to issue declaratory judgments") and in 28 U.S.C. § 1491(a)(3) (promulgating the U.S. Claims Court may grant declaratory judgment and injunctive relief, among other equitable measures, only if a request for complete relief arises in the pre-contract), the facts in the case at bar require this court to conclude that defendant's attempts to exclude Alaska's requests for injunctive and declaratory relief are illogical. After all, adjudication of the monetary claim (Alaska's allegation in the amended complaint that it is entitled to at least $25,000,-000) implicates whether Alaska will be entitled to receive 90% of the revenue from public land subject to an MLA lease in Alaska to the exclusion of others (declaratory relief) and estops the United States from disbursing funds to third parties otherwise and properly due to Alaska (injunctive relief).

Precedent for appending subordinate requests for issuance of declaratory relief (equitable relief) to prominent monetary claims arose particularly clear in *McKeel v. Islamic Republic of Iran,* 722 F.2d 582 (9th Cir.1983). *See, Town of No. Bonneville, Wash. v. U.S. District Court,* 732 F.2d 747, 751 (9th Cir.1984). In *McKeel,* a suit involving former hostages at the U.S. Embassy in Tehran and their families, the U.S. Court of Appeals for the Ninth Circuit asserted that the U.S. Claims Court does have authority to issue declaratory relief if a claim "is tied and subordinate to a monetary award." *Id.* at 591. Applying this legal standard to circumstances in the case at bar, we conclude that Alaska's request for declaratory relief is secondary to the state's significant multi-million monetary claim. Consequently, this court possesses jurisdiction to analyze the merits of Alaska's declaratory relief request since this claim is secondary to, though inextricably related, the substantial monetary request for relief. *See also, Hoopa Valley Tribe v. United States,* 219 Ct.Cl. 492, 596 F.2d 435, 443 (1979).

Lastly, since this is Alaska's *first* request to amend its complex complaint, "justice so requires" the grant of said motion. The facts in the case at bar are clearly distinguishable from *Friedman v. Transamerica Corp.,* 5 F.R.D. 115 (1976), where the court denied plaintiff's motion to amend its complaint for the *fourth* time. Citing haphazard inclusion and deletion of various subject matters as well as excessive delay, the court there concluded its decision would lead towards ending the dispute. *Id.* at 116. In contrast to the findings of the *Friedman* court, we view Alaska's filing of the exceedingly complex amended complaint to have been reasonably timely, given the totality of the circumstances, and essential to the fair adjudication of this matter.[3]

*Conclusion*

For all of the above-stated reasons, Alaska's motion to amend its complaint is HEREBY GRANTED. The United States and CIRI shall answer, as required, within the time allotted by the RUSCC.

IT IS SO ORDERED.

---

**3.** Even if substantial reason to deny leave to amend exists, and, of course, we find none, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice, nevertheless, requires granting leave. *Jamieson by and through Jamieson v. Shaw,* 772 F.2d at 1208.