**MARATHON OIL COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Cook Inlet Region, Inc., Intervenor.**

No. 457–88L.

United States Claims Court.

May 30, 1989.

Patricia L. Brown, Washington, D.C., for plaintiff. Wilkinson, Barker, Knauer, & Quinn, of counsel.

Rebecca A. Donnellan, Washington, D.C., for defendant.

William D. Temko, Los Angeles, Cal., for intervenor Cook Inlet Region, Inc.

## OPINION

BRUGGINK, Judge.

Pending before the court are Marathon Oil Company's Motion For Partial Stay Of An Agency Order, and defendant's Motion For Protective Order. Both motions have been briefed and oral argument was heard May 23, 1989. After argument, the court ruled from the bench denying plaintiff's motion and granting defendant's motion. This opinion further explains the basis for the court's ruling.

## BACKGROUND

This is an action for the return of royalty payments on various oil and gas leases in the Kenai Field in Alaska. The following recitation of background facts is drawn from the court's opinion of February 21, 1989 regarding defendant's motion to dismiss, or in the alternative for transfer.[1]

## FACTS

There are seven leases at issue. Plaintiff Marathon Oil Company ("Marathon") owns an undivided, fifty percent working interest in the leases and Union Oil Company of California ("Union") owns the remaining interest. The leases call for royalty payments based on the value of oil and gas produced. The royalty interest in six of the leases is shared by intervenor Cook Inlet Region, Incorporated ("CIRI")[2] and the United States Government in a ratio of 65% to 35% respectively. The royalty interest in one lease, A–028142, is owned exclusively by CIRI. In the past, the Minerals Management Service ("MMS") of the Department of Interior ("DOI") has administered the leases for both the Government and CIRI. The parties are in disagreement whether and to what extent MMS currently administers the leases.

Pursuant to Section 101(c)(1) of the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1711(c)(1), which became effective January 12, 1983, the MMS undertook comprehensive and detailed audits and reviews of all federal oil and gas lease accounts. Such reviews in the Kenai Unit led to various determinations by MMS that the lessees had substantially undervalued the gas produced there. This case specifically concerns the valuation of gas "rented" by Marathon and Union to Standard Oil Co. of California and Atlantic Richfield Co. The rental agreement was entered into January 1, 1966. The gas was used by Chevron and ARCO for repressurization and secondary recovery operations at the Soldotna Creek/Swanson River Oil Field.

In 1984, MMS notified Union that it intended to redetermine royalties due on Union's production in the Kenai Field. In November 1985, MMS, CIRI, and Union settled a variety of disputed royalty issues including Union's share of Swanson River rental gas ("SRRG") production from the Kenai Field. Marathon was not involved in that settlement.

In May 1986, Marathon was advised that MMS intended to revalue the royalties due on Marathon's share of SRRG production. MMS issued a final order regarding SRRG, which was approved by the Assistant Secretary for Land and Minerals Management on July 12, 1988. The order was subsequently amended and approved on July 29, 1988. The final payment date was thirty days from the date of receipt. It is this order which is the subject of the instant suit. The order requires Marathon to pay more than $5,700,000 in additional royalties on its share of the gas delivered under the

---

1. 16 Cl.Ct. 332. That opinion granted defendant's motion to dismiss as to Count IV, which the court construed as a request for declaratory relief with respect to amounts not paid, and paragraphs 36 and 38, which assert a regulatory taking occurred. Jurisdiction was retained as to the remaining contract-based counts, but was limited to the amounts actually paid. *Id.* at 337. Defendant's motion to transfer was denied.

2. CIRI is an Alaska Native Corporation organized and operated under the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601, *et seq.* CIRI was allowed to intervene pursuant to RUSCC 24(a)(2) by this court's order of September 2, 1988.

SRRG agreements for the period January 1, 1977 through December 31, 1986. In addition, the order requires Marathon to pay an unspecified amount of royalties on SRRG production from January 1, 1987 to the present and to pay accrued interest on underpaid royalties.

Marathon alleges that immediately upon receipt of the MMS order it requested an administrative stay and informed the agency it would seek judicial review. Marathon asserts that because MMS did not respond to its request for an administrative stay, it was forced to respond to the order by making payment on August 3, 1988. Marathon did not, however, pay the full amount required by the July 12 order. Rather it paid the Government $1,707,072.51, an amount Marathon deemed to be the royalty share owed to the United States (as distinct from CIRI) for the period from July 1982 to the present. Marathon alleges that under certain provisions of the Unit Operating Agreement[3] it was only required to pay the "federal" portion of the assessment. Marathon further contends it was not obligated to pay royalties for periods prior to 1982 since such assessments are barred by the statute of limitations.

Marathon filed suit in this court August 4, 1988. The complaint challenges MMS's order of July 8, 1988 demanding additional royalty payments in the principal amount of $5,742,865.11 for the period January 1, 1977 through December 31, 1986, plus additional royalties beyond that date, along with an unspecified amount of interest. On March 20, 1989, the agency filed a certified administrative record, consisting of twenty-three volumes.

## DISCUSSION

### I. *Motion For Stay*

■ The Department of the Interior has granted Marathon several extensions of the date for compliance with the revaluation order. The latest extension, dated March 16, 1989, grants until June 21, 1989. During oral argument counsel for defendant confirmed that the Government did not anticipate extending the effective date of the order beyond June 21. Marathon has therefore moved that the court enter an order to the following effect:

1. Staying in part the effectiveness and enforcement of the Order of the Minerals Management Service ("MMS"), as amended and approved by the Assistant Secretary of the Interior for Land and Minerals Management on July 12, 1988;

2. Staying further administrative action concerning the subject matter of this action until such time as the Court has determined the merits of this suit.

Marathon alleges that unless the partial stay is granted, it will be required to pay the remaining amount due under the redetermination order (approximately $4 million) on June 21, 1989. Defendant contends that the relief sought is beyond the court's jurisdiction.

In its opinion of February 21, 1989, the court limited the issues in this action to those related to the lease agreements between Marathon and the Government. More specifically, the court limited the controversy to the amount Marathon has already paid under protest, approximately $1.7 million. By its motion for a stay, the plaintiff is in effect seeking to bring within the dispute the amount it deliberately chose not to pay. This it cannot do. As the earlier opinion makes clear, the price of admission to this court was the payment of part or all of the protested back royalties. Having chosen to limit that payment, and thus the scope of relief, plaintiff cannot bootstrap the remaining $4 million into the dispute through a motion for a stay.

■ Plaintiff concedes, as it must, that the court does not have general equitable powers. The relevant jurisdictional source, 28 U.S.C. § 1491 (1983), has been construed

---

3. Unit Agreement for the Development and Operation of the Kenai Unit Area, Third Judicial Division, State of Alaska, No. 14–08–001–6367, May 1, 1959. The agreement contains various provisions relating to the operation and development of the field. The provision on which Marathon bases its partial payment is No. 28, "Loss of Title."

by the Supreme Court to limit relief to money damages, presently due; the court specifically does not have general power to enter declaratory or injunctive relief. *Bowen v. Massachusetts,* —— U.S. ——, 108 S.Ct. 2722, 2737–2738 n. 40, 101 L.Ed.2d 749 (1988); *United States v. King,* 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1501–02, 23 L.Ed.2d 52 (1969); *Busby School of Northern Cheyenne Tribe v. United States,* 8 Cl.Ct. 588, 593 (1985).

Marathon attempts to avoid this fundamental restriction on our jurisdiction through a number of arguments. First, it points to that line of decisions in this court and its predecessor which allow the exercise of equitable powers when that exercise is incidental to the court's general jurisdiction. As the defendant correctly points out, however, that type of equitable relief has not been extended to the granting of an injunction. The cases plaintiff cites involve rescission or reformation of a contract, or accounting incident to other relief. *Pauley Petroleum Inc. v. United States,* 219 Ct.Cl. 24, 38–40, 591 F.2d 1308, 1316–17 (1979) (rescission); *McNamara Constr. of Manitoba, Ltd. v. United States,* 206 Ct.Cl. 1, 4–5, 509 F.2d 1166, 1167–68 (1975) (reformation of contract); *Klamath & Modoc Tribes v. United States,* 174 Ct.Cl. 483, 490 (1966) (accounting incident to money relief); *Iowa–Wisconsin Bridge Co. v. United States,* 114 Ct.Cl. 464, 504, 84 F.Supp. 852, 862–63 (1949) (reformation of contract), *cert. denied,* 339 U.S. 982, 70 S.Ct. 1020, 94 L.Ed. 1386 (1950). The Court of Claims summarized the limitation in *Carney v. United States,* 199 Ct.Cl. 160, 163–64, 462 F.2d 1142, 1145 (1972):

> We may exercise equitable powers as an incident to our general jurisdiction, for example, reforming a contract and enforcing it as reformed in an action at law. But our general jurisdiction under the Tucker Act, 28 U.S.C. § 1491, does not include an action for "specific equitable relief" such as an action for "accounting."

In its reply brief Marathon points to this court's decision in *Alaska v. United States,* 15 Cl.Ct. 276 (1988), as precedent for a holding that this type of ancillary equitable relief can extend to declaratory and injunctive relief. The plaintiff in that case sought to amend its complaint to increase the amount of the recovery. The original complaint had three counts, one for recovery of $20 million, a second for a declaration of Alaska's rights under the oil and gas leases in question, and a third which sought to enjoin future disbursements to third parties. The court allowed the amendment over defendant's objection that the latter two original counts amounted to improper requests for declaratory and injunctive relief. The precise issue in *Alaska* was whether plaintiff could amend its complaint to increase the dollar amount sought. Defendant had not filed a motion to dismiss the questioned counts of the original complaint. While the court did consider the viability of those counts, from the relatively limited discussion of facts necessary to that order, it would appear that a decision on entitlement to the $20 million of oil and gas revenues at issue necessarily requires a declaration of ownership rights. While allowance of the injunctive count is more troublesome, the court notes that the statutory scheme in that case could result in an order directing a particular division of funds. Given the clarity of appellate precedent, the court declines to read *Alaska* as contrary to the general rule barring specific injunctive or declaratory relief that is not tied and subordinate to monetary relief. *See Hoopa Valley Tribe v. United States,* 219 Ct.Cl. 492, 596 F.2d 435 (1979).

In any event, in the court's view, the relief sought here is more clearly foreclosed. It was plaintiff's choice to bring only part of the disputed amount into this court. By not paying the entire $5.7 million, Marathon insulated the remaining $4 million from the direct reach of any order in the event relief is granted. A stay would therefore only benefit plaintiff if it reached beyond the subject matter of this suit to address the money which plaintiff specifically elected not to pay up front.

For the same reasons, plaintiff's invocation of the All Writ's Act, 28 U.S.C. § 1651(a) (1983) (courts can issue all writs "necessary or appropriate in aid of their

respective jurisdictions"), is inapposite. The court does not need any injunctive aid in resolving the dispute before it. The stay which plaintiff proposes would not protect the court's jurisdiction over the $1.7 million already paid. If Marathon were forced to pay the $4 million balance, this suit would continue without interruption.

Since the request for a stay is beyond our jurisdiction, it is unnecessary to address plaintiff's arguments in favor of issuing injunctive relief.[4] While the court is sympathetic with the inconvenience caused to plaintiff by the forum choices it must consider, the court is not at liberty to ignore plain limitations in the present law.

## II. Defendant's Motion For A Protective Order

Since commencement of the action, plaintiff has submitted interrogatories and requests for document production to defendant, and defendant has, with certain expressed limitations and reservations, complied with that discovery.[5] Now, however, defendant has moved pursuant to RUSCC 26(c) for an order quashing the deposition of J. Steven Griles, former Assistant Secretary of the Interior, and any other present or former official of the Department of Interior, and prohibiting any further discovery by plaintiff. For the reasons which follow, defendant's motion is granted.

▬ While the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq. (1983) (APA) is not an independent source of jurisdiction for this court, we do look to the standard of review set out in the APA and in cases construing it when reviewing administrative actions. *Foote Mineral Co. v. United States,* 228 Ct.Cl. 230, 233–34, 654

F.2d 81, 85 (1981). In the case of an informal agency action such as the one at bar, the agency's final action is reviewed to determine if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, not in substantial compliance with procedural requirements, or not supported by substantial evidence. *Foote,* 228 Ct.Cl. at 234, 654 F.2d at 85; *S & G Excavating, Inc. v. United States,* 15 Cl.Ct. 157, 161 (1988); *Swartz v. United States,* 14 Cl.Ct. 570, 578 (1988); *see* 5 U.S.C. § 706(2)(A). This case presents the additional inquiry of whether the agency's action violates the terms of the lease agreements. The inquiry permitted by this review is normally limited to the administrative record. *Hedman v. United States,* 15 Cl.Ct. 304, 320 (1988); *S & G Excavating, Inc.,* 15 Cl.Ct. at 161; *Krzeminski v. United States,* 13 Cl.Ct. 430, 437 (1987); *Gables by the Sea, Inc. v. Lee,* 365 F.Supp. 826, 830 (S.D.Fla. 1973). *De novo* review of the action is only appropriate where the action is adjudicatory in nature and the agency fact finding is inadequate, or where issues not present before the agency are raised in a proceeding to enforce nonadjudicatory agency action. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *Hedman,* 15 Cl.Ct. at 320; *Lloyd v. Illinois Regional Transp. Auth.,* 548 F.Supp. 575, 580 (N.D. Ill.1982). Neither circumstance applies here. It follows therefore that additional evidence is not permitted, *Roberts v. Morton,* 549 F.2d 158, 160 (10th Cir.1976), and the only potential area in which discovery would be relevant in this case is with regard to identification of the administrative record.[6]

---

**4.** Marathon also contends that defendant has waived any right to the $4 million balance by not counterclaiming to seek enforcement of its order as to the remaining amount. If that is true, a stay would not be necessary. Plaintiff could simply refuse to pay and hope to succeed with that affirmative defense in any subsequent enforcement action, or, as it intimates in its reply brief, it might seek the protection of a stay in district court. In any event, the merits of that issue are not before the court.

**5.** In its response to the request for documents, defendant asserted that disclosure of some unspecified documents was protected by the attorney client and attorney work product privilege. The propriety of that invocation is not before the court.

**6.** While plaintiff indicates in its brief that it will allege bad faith on the part of decision making officials, it does not argue that it is entitled to discovery on that ground. *Cf. Citizens to Protect Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825. Nor has it contended that discovery is appropriate due to a failure by the agency to explain adequately its action. *Cf. Camp v. Pitts,* 411

In *Citizens to Preserve Overton Park,* the Court referred to the "administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420, 91 S.Ct. at 825. Other courts have referred to "the whole record," *Hedman* 15 Cl.Ct. at 321, or "the administrative record already in existence, not some new record made initially in the reviewing court," *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). In *Exxon v. Dept. of Energy,* 91 F.R.D. 26, 35–36 (N.D.Tex.1981), the court indicated that in applying the substantial evidence test, materials before intermediate administrators would be considered part of the record.

In *Tenneco Oil Co. v. Dept. of Energy,* 475 F.Supp. 299 (D.Del.1979), the court defined the complete administrative record as consisting of "all the documents and materials that were directly or indirectly considered by the decision-makers at the time the decisions were rendered." *Id.* at 317 (citing *Peirson v. United States,* 428 F.Supp. 384 (D.Del.1977)). The court permitted discovery related to the administrative record through interrogatories and document requests, recognizing an exception to the general rule when "a showing is made that [the administrative record] may not be complete." *Id.*[7] The court found that the completeness of the record was facially untenable since the proffered record was comprised almost exclusively of the plaintiff's submissions and the agency's decision.

Other cases cited by Marathon for the proposition that limited discovery is available are distinguishable on the same basis. In *Exxon v. Dept. of Energy,* 91 F.R.D. 26, for example, the court found, before allowing discovery as to the record, that

> Exxon has made a strong showing that the Administrative Record certified to this Court is incomplete. Incompleteness is evident from the record's face. The 126 page record consists solely of two copies of Exxon's Appeal of Remedial

Order, Exxon's Application for Stay of the Remedial Order, the Decision and Order of the FEA granting a stay and the Decision and Order of DOE's Office of Hearings and Appeals.... Not an iota of documentary 'evidence' has been furnished.

*Id.* at 34 (citations to record omitted). In *Petrolane Inc. v. United States,* 79 F.R.D. 115, 119 (C.D.Cal.1978), the court merely recognized the plaintiff's right to document production in the future, after it reviewed the record, and presumably made some showing that the record was deficient.

By contrast, here the record consists of twenty-three volumes binding thousands of pages. A cursory review shows significant amounts of data, none of which appears to have been generated after July 1988, the date of the agency action. Plaintiff nonetheless argues that the presently certified record is suspect for a number of reasons. First, it states that the index is "very poor," citing a failure to list certain documents which Marathon itself submitted during the review process, and the use of all encompassing descriptions. This asserted defect, if borne out, does not logically suggest a need for discovery. It suggests the need either for a better index or, if indeed documents are missing from the record itself, supplementation of the record. At this point plaintiff has not alleged that relevant documents are excluded. Second, plaintiff asserts the wording of the certification of the record suggests a defect. It attaches significance to the fact that the record was certified by James Cason, Acting Assistant Secretary, someone who apparently was not one of the decision makers. That fact in no way undercuts the certification. Nor does it concern the court that Cason certified that the documents "identified [in the index] constitute the complete administrative record." The index of necessity incorporates all the documents behind it.

U.S. at 142–43, 93 S.Ct. at 1244; *Friends of the Earth v. Hintz,* 800 F.2d 822, 829 (9th 1986).

**7.** The court also permitted discovery of the agency's construction of certain critical regula-

tory phrases which it found were subject to "uncertainty." *Tenneco Oil Co.,* 475 F.Supp. at 318.

Next Marathon contends that defendant's statements in court, as well as its answers to interrogatories, demonstrate that the certified record was "compiled" after this lawsuit commenced. Once again, the court does not see that as an indicium of questionability. Webster's defines the verb "to compile" as the collecting together of materials into a volume. Webster's Seventh New Collegiate Dictionary (1969). Nothing in that term implies the creation of new materials. It is not remarkable, and in any event not suspicious, that the agency had to gather together from various sources the material "before" it. The mere fact that documents were not organized in a package at the time of a decision does not mean those materials were not part of the record, particularly in the case of an informal adjudication in which the ultimate decision maker presides at the apex of a pyramid of staff and lower-level decision makers.

In this connection, it is noteworthy both that the defendant has already answered interrogatories related to composition of the record, and also that defendant's answers categorically state that all materials before the agency are included in the record, and that every document included in the record was before the agency.

In sum, there is nothing before the court which draws the existing certified record into question, and thus no reason to ignore the general limitation on discovery in these circumstances. *See Scalzo v. Hurney,* 338 F.2d 339 (3rd Cir.1964); *National Petroleum Refiners v. Federal Trade Commission,* 392 F.Supp. 1052, 1054 (D.D.C.1974). *Cf. United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941).

### CONCLUSION

The relief requested in the motion for a partial stay is outside this court's jurisdiction. The motion is thus denied. Defendant's motion for a protective order is granted. All outstanding discovery is quashed. Pursuant to instructions given during oral argument, defendant is directed to file its motion for summary judgment on or before August 21, 1989. Plaintiff's response will be due within sixty days of service of defendant's motion.