**WILLIAM C. HAAS REALTY MANAGEMENT, INC., and W.C. Haas Service Co., Inc.**

**v.**

**The UNITED STATES.**

No. 343–82C.

United States Claims Court.

Aug. 31, 1983.

Charles C. Shafer, Jr., Kansas City, Mo., for plaintiffs.

R. Anthony McCann, Washington, D.C., for defendant; Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

In the complaint,[1] the plaintiffs, which are Missouri corporations with their principal place of business in Kansas City, Missouri, alleged that the defendant, represented by the Department of Labor ("the Department"), violated an agreement dated September 4, 1981, between the plaintiffs and the Department. The plaintiffs requested a judgment in the amount of $82,416.71 against the defendant.

The defendant subsequently filed a motion to dismiss or, in the alternative, for summary judgment; the plaintiffs responded; the defendant replied; and oral arguments were made by the parties before the court.

### The Facts

The facts, as disclosed by the papers before the court, will be outlined in subsequent paragraphs.

In 1977, the Department filed suit against the present plaintiffs in the U.S. District Court for the Western District of Missouri, contending that the plaintiffs had violated section 15(a)(2) and (5) of the Fair Labor Standards Act of 1938 (52 Stat. 1060, 1068; 29 U.S.C. § 215(a)(2) and (5) (1976)) with respect to the payment of wages and overtime compensation. The present plain-

---

1. Filed in 1982 as a petition with the former U.S. Court of Claims and transferred to this court pursuant to section 403(d) of the Federal Courts Improvement Act of 1982 (Pub.L. 97–164, 97th Cong., 96 Stat. 25, 57–58).

tiffs (defendants in the earlier litigation) bitterly contested the Department's allegations, and continued to do so until September 1981.

On September 4, 1981, a settlement of the earlier case was agreed upon between the Department and the present plaintiffs. The agreement, which was reduced to writing and duly signed on behalf of the Department and the present plaintiffs, provided in pertinent part as follows:

1. *Press Release*

The Plaintiff [Department] will not issue a press release in regard to the settlement or the terms thereof.

\* \* \* \* \* \*

3. *Advertising Re Former Employees*

The Plaintiff will insert only "blind" advertisements in searching for former employees of the \* \* \* Defendants [present plaintiffs]. In such advertisements, no mention will be made of the NAMES of the two \* \* \* Defendants, or the settlement terms. The advertising will basically be directed along the lines of: "Will the following named persons, please contact the Department of Labor, attn: Mr. _____." \* \* \* [I]t will be a benign advertisement.

\* \* \* \* \* \*

5. *Cost of Defense Settlement*

\* \* \* \* \* \*

In view of the high potential costs to \* \* \* [the defendants], they are willing to make a "cost of defense" cash settlement of $46,800.00 to the Plaintiff. Defendants maintain and will continue to maintain they owe nothing to former employees.

Nevertheless, the Defendants understand the Plaintiff will seek to locate the former employees Plaintiff contends are involved and make cash payments to such former employees or representatives.

Defendants do not agree with Plaintiff's intended use of the $46,800.00. However, Defendants will not contest whatever the disposition Plaintiff makes of the funds \* \* \*.

A consent judgment was entered by the District Court on the basis of the agreement; and the defendants paid the agreed sum of $46,800 to the Department.

Sometime before May 19, 1982, the Department's Kansas City, Missouri, Regional Office issued to the information media, and particularly to the Kansas City Star, a newspaper of general circulation in the Kansas City, Missouri, area, an advance press release, which was to be released as of 10:00 a.m. on May 19. The press release stated in part as follows:

$53,000 IN BACK WAGES HELD BY THE LABOR DEPARTMENT FOR KANSAS CITY AREA WORKERS

Checks totaling more than $53,000 are being held for 229 workers believed living throughout the metropolitan Kansas City area, according to M.J. Villarreal, Jr., Assistant Regional Administrator/Wage and Hour Division of the Employment Standards Administration (ESA). The monies represent settlements with the U.S. Department of Labor agency after the former employers agreed to pay back-wages for alleged minimum wage or overtime pay violations.

Villarreal indicated the checks ranged from $150 to $1,000 and that a majority of the workers formerly were employed by a real estate management firm, a computer service, a restaurant, and a service station chain.

The Assistant Regional Administrator stated that persons whose names are listed should write or call: Wage and Hour Division, ESA, U.S. Department of Labor, 911 Walnut Street, Room 2000, Kansas City, Missouri 64106. The telephone number is (816) 374–5386. Villarreal said that the individuals should provide their social security number and information concerning their previous employment history with the firms.

The material just quoted was followed by a list containing the names of a large number of individuals.

On May 19, 1982, in response to a request submitted by the Kansas City Star under the Freedom of Information Act (5 U.S.C.

§ 552 (1976)), the Department's Kansas City Regional Office informed the Star that William C. Haas Realty Management, one of the present plaintiffs, was one of the firms mentioned in the May 19, 1982 press release, and that the total back wages paid by the Haas firm was $46,800.

### The Motion To Dismiss

■ The defendant's motion to dismiss is based on the rule of comity. This rule was explained as follows by this court's predecessor, the U.S. Court of Claims, in the case of *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 394, 343 F.2d 943, 946 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966):

> The long established rule of comity in such cases [where actions are filed in different courts with concurrent jurisdiction] is that the court having equal and concurrent jurisdiction over the subject matter which first obtains and exercises this jurisdiction, retains jurisdiction until a final judgment is entered. * * * [Citations omitted.]

The rule of comity, strictly speaking, is not applicable as between the United States District Court for the Western District of Missouri, on the one hand, and the U.S. Court of Claims and this successor court, on the other hand, with respect to the litigation between the United States (represented by the Department in the district court case) and the present plaintiffs. As the jurisdiction of the Court of Claims was restricted to actions *against* the United States, this court's predecessor obviously did not have concurrent jurisdiction with the district court over the suit that was instituted *by* the United States (represented by the Department) against the present plaintiffs. Furthermore, as the jurisdiction of the district courts over claims against the United States under the so-called Tucker Act is restricted to claims which do not exceed $10,000 in amount (28 U.S.C. § 1346(a)(2) (1976)), the United States District Court for the Western District of Missouri obviously does not have concurrent jurisdiction with this court over the present

action, in which the plaintiffs assert a claim against the United States in the amount of $82,416.71.

The defendant, however, extrapolates that "[i]f the district court had jurisdiction over the underlying dispute it should also have jurisdiction over a violation of the agreement to settle that dispute as well as jurisdiction to alter or amend its own judgment"; and that "[t]he district court, the court of concurrent jurisdiction which first exercised jurisdiction, should retain the authority to enforce or reject plaintiffs' claim."

The defendant contends that the present case is similar to *Carter-Wallace, Inc. v. United States,* 196 Ct.Cl. 35, 449 F.2d 1374 (1971). In that case, the Government had filed an anti-trust suit against Carter-Wallace, Inc. and another company in the U.S. District Court for the Southern District of New York. After extensive negotiations, the suit was settled and the court entered a consent judgment, which contained many terms and conditions relating to the licensing, marketing, and pricing practices of Carter-Wallace, Inc. with respect to a product called meprobamate. In the consent judgment, the district court retained jurisdiction to consider any future controversies that might arise with respect to the construction or the carrying out of the provisions of the judgment. Subsequently, Carter-Wallace, Inc. filed a patent infringement action against the United States in the U.S. Court of Claims for the allegedly unauthorized use of meprobamate. In the litigation before the Court of Claims, the United States, in effect, attacked a price arrangement that was set out in the consent judgment previously entered by the district court in the earlier litigation. The Court of Claims said that such an attack should be made directly in the district court, and not in the Court of Claims (196 Ct.Cl. at 51, 449 F.2d at 1383).

The Government's argument is not persuasive.

The *Carter-Wallace* case is inapposite here. The plaintiffs in this case do not express any dissatisfaction with, or request

that any change be made in, the consent judgment which the U.S. District Court for the Western District of Missouri entered in the previous case. Rather, the plaintiffs object to the alleged violation of the September 4, 1981 agreement between themselves and the Department. The agreement was not part of the consent judgment (although the consent judgment was entered on the basis of the parties' agreement to settle the case).

Furthermore, the consent judgment by the district court that was attacked by the Government before the Court of Claims in *Carter-Wallace* specifically stated that the district court retained jurisdiction "for the purpose of enabling any of the parties * * * to apply * * * at any time * * * for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, [or] for the amendment or modification of any of the provisions thereof * * *." In the present situation, there was no express retention of jurisdiction by the district court in the consent judgment which terminated the litigation between the Department and the present plaintiffs.

The defendant also cites the order which the Court of Claims entered in *James A. Partridge,* No. 438–75 (219 Ct.Cl. 681). In that case, James A. Partridge had been released from his position with the National Aeronautics and Space Administration as part of an agency-wide reduction-in-force program. He instituted suit in the U.S. District Court for the Northern District of Ohio, and the court remanded the case to the then Civil Service Commission for a trial-type hearing on the plaintiff's various claims. The Commission on remand held that the reduction-in-force was proper and that Partridge was not deprived of any rights to which he was entitled. The plaintiff then filed an action in the Court of Claims, seeking reinstatement, back pay, and other benefits, and contending that the Commission had misconstrued the orders of the district court and had failed to accord the plaintiff the kind of hearing directed by the district court. In its order, the Court of Claims held that the rule of comity was

applicable and the Court of Claims should not consider Partridge's contention relative to the Commission's alleged failure to comply with the district court's orders. Partridge was allowed a 60-day period within which to file with the district court an application for further relief.

The Court of Claims' order in the *Partridge* case does not have precedential value, and, if it did, it would not have any bearing on the problem in the present case. As stated earlier, the dispute here does not concern the consent judgment that was entered by the district court in the litigation between the Department and the present plaintiffs. The parties to the earlier case appear to have carried out fully the orders of the district court, and the present plaintiffs do not express any dissatisfaction with the district court's consent judgment. Rather, the present case arises because of the Department's alleged violation of the September 4, 1981 agreement to settle the case, which was separate from the consent judgment.

The court concludes that the rule of comity is not applicable here and does not require the dismissal of the complaint in this case. Accordingly, the defendant's motion must be denied insofar as it seeks the dismissal of the complaint.

### The Alternative Motion for Summary Judgment

█ This court's Rule 56(c) authorizes the granting of a motion for summary judgment if the materials before the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In the present case, with respect to the question of whether the 1981 agreement was breached, there does not appear to be any disagreement between the parties concerning the basic facts of the case, which have been recited earlier in the opinion. Consequently, as to the breach question, it is appropriate to consider the defendant's alternative motion for summary judgment

on the basis of the record that is now before the court.

The facts, as previously recited, plainly refute the defendant's contentions that the Department did not violate the provisions of the September 4, 1981 agreement between the Department and the present plaintiffs.

The September 4, 1981 agreement expressly provided that the Department would "not issue a press release in regard to the settlement or the terms thereof," but would only issue a "benign" advertisement "along the lines of: 'Will the following named persons, please contact the Department of Labor, attn: Mr. _____.'"

Notwithstanding this express agreement on the part of the Department, the Department not only issued a press release, but the press release referred specifically to checks that were "being held for 229 workers believed living throughout the metropolitan Kansas City area," that the checks represented monies which had been received by the Department from "former employers," including "a real estate management firm," that had "agreed to pay back-wages for alleged minimum wage or overtime pay violations."

Although the press release did not give the names of the "former employers," they were identified in a way that was a virtual invitation for an enterprising Kansas City newspaper to inquire concerning the names of the firms that had been charged with depriving local workers of minimum wages and overtime pay required by law and had "agreed to pay back-wages for alleged minimum wage or overtime pay violations."

Of course, in order to recover in this case, the plaintiffs have the burden not only of proving that the September 4, 1981 agreement was breached by the Department, but also of proving that the plaintiffs sustained a pecuniary loss or losses as the natural and proximate result of the breach. *Willems Industries, Inc. v. United States,* 155 Ct.Cl. 360, 376, 295 F.2d 822, 831 (1961), *cert. denied,* 370 U.S. 903, 82 S.Ct. 1249, 8 L.Ed.2d 400 (1962); *George v. United States,* 166 Ct.Cl. 527, 531, *cert. denied,* 379 U.S. 929, 85 S.Ct. 325, 13 L.Ed.2d 341 (1964).

The allegations in the complaint on the issue of damages are very general in nature. They merely assert that the plaintiffs "have now been damaged because of the blatant action of the Department of Labor in handing out a news release which was totally in violation of the Settlement Agreement," and that the plaintiffs "have suffered actual losses and damages of $82,-416.71." The complaint does not attempt to explain exactly how the alleged pecuniary losses of $82,416.71 were incurred and that they were the natural and proximate result of the Department's action in breaching the September 4, 1981 agreement.

It is certainly reasonable to infer that the plaintiffs experienced embarrassment because of the disclosure that they had been charged with having failed to pay employees the minimum wages or overtime pay required by law, and that, in settlement of the controversy, they had paid over to the Department a total of $46,800 to be distributed to their employees. Mere embarrassment, however, is not compensable in this type of case.

However, it appears that the plaintiffs should be afforded an opportunity to prove that they actually sustained a pecuniary loss or losses because of the breach of the agreement.

### Conclusion

For the reasons stated in the opinion, the court concludes that the complaint is not subject to dismissal under the rule of comity, and that the defendant is not entitled to a judgment as a matter of law on the alternative motion for summary judgment.

IT IS THEREFORE ORDERED as follows:

1. The defendant's motion of November 1, 1982, is denied.

2. Within 30 days after the date of this order, each party shall file in the clerk's office a pretrial statement (original and 2 copies, plus proper proof of service of a

copy on opposing counsel) setting out the following information:

(a) A list of the witnesses whom the party intends to present at the trial on the merits, giving as to each witness the name, address, and a succinct indication of the issue or issues to which the testimony of the witness will be directed.

(b) An estimate as to the amount of time that will probably be required for the examination and cross-examination of the party's witnesses.

(c) The party's preference regarding the place for the holding of the trial.

(d) Information regarding any existing commitments that should be considered by the court in fixing a time for the trial.

3. The plaintiffs' pretrial statement, in addition to the information called for in paragraph numbered 2, shall set out the financial data relied on to support the claim of pecuniary loss.