**MARATHON OIL COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**Cook Inlet Region, Inc., Intervenor.**

No. 457–88L.

United States Claims Court.

Feb. 21, 1989.

Patricia L. Brown, Washington, D.C., for plaintiff. Luisa L. Lancetti, of counsel.

Rebecca A. Donnellan, Washington, D.C., for defendant.

William Temko, Los Angeles, Cal., for intervenor Cook Inlet Region, Inc.

## OPINION

BRUGGINK, Judge.

Pending is defendant's motion to dismiss or in the alternative, for transfer to the United States District Court for the District of Alaska. For the reasons that follow, the motion to transfer is denied and the motion to dismiss is granted in part.

### FACTS

This case concerns royalty payments on various leases for oil and gas production in the Kenai Field in Alaska. There are seven leases at issue. Plaintiff Marathon Oil Company ("Marathon") owns an undivided, fifty percent working interest in the leases and Union Oil Company of California ("Union") owns the remaining interest. The leases call for royalty payments based on the value of oil and gas produced. The royalty interest in six of the leases is shared by intervenor Cook Inlet Region, Incorporated ("CIRI")[1] and the United States Government in a ratio of 65% to 35% respectively. The royalty interest in one

lease, A–028142, is owned exclusively by CIRI. In the past, the Minerals Management Service ("MMS") of the Department of Interior ("DOI") has administered the leases for both the Government and CIRI. The parties are in disagreement whether and to what extent MMS currently administers the leases.

Pursuant to Section 101(c)(1) of the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1711(c)(1), which became effective January 12, 1983, the MMS undertook comprehensive and detailed audits and reviews of all federal oil and gas lease accounts. Such reviews in the Kenai Unit led to various determinations by MMS that the lessees had substantially undervalued the gas produced there. This case specifically concerns the valuation of gas "rented" by Marathon and Union to Standard Oil Co. of California and Atlantic Richfield Co. The rental agreement was entered into January 1, 1966. The gas was used by Chevron and ARCO for repressurization and secondary recovery operations at the Soldotna Creek/Swanson River Oil Field.

In 1984, MMS notified Union that it intended to redetermine royalties due on Union's production in the Kenai Field. In November 1985, MMS, CIRI, and Union settled a variety of disputed royalty issues including Union's share of Swanson River rental gas ("SRRG") production from the Kenai Field. Marathon was not involved in that settlement.

In May 1986, Marathon was advised that MMS intended to revalue the royalties due on Marathon's share of SRRG production. MMS issued a final order regarding SRRG, which was approved by the Assistant Secretary for Land and Minerals Management on July 12, 1988. The order was subsequently amended and approved on July 29, 1988. The final payment date was thirty days from the date of receipt. It is this order which is the subject of the instant suit. The order requires Marathon to pay more than $5,700,000 in additional royalties

---

1. CIRI is an Alaska Native Corporation organized and operated under the Alaska Native Claims Settlement Act, 43 U.S.C. § 1601, *et seq.* CIRI was allowed to intervene pursuant to RUSCC 24(a)(2) by this court's order of September 2, 1988.

on its share of the gas delivered under the SRRG agreements for the period January 1, 1977 through December 31, 1986. In addition the order requires Marathon to pay an unspecified amount of royalties on SRRG production from January 1, 1987 to the present and to pay accrued interest on underpaid royalties.

Marathon alleges that immediately upon receipt of the MMS order it requested an administrative stay and informed the agency it would seek judicial review. Marathon asserts that because MMS did not respond to its request for an administrative stay, it was forced to respond to the order by making payment on August 3, 1988. Marathon did not, however, pay the full amount required by the July 12 order. Rather it paid the Government $1,707,072.51, an amount Marathon deemed to be the royalty share owed to the United States (as distinct from CIRI) for the period from July 1982 to the present. Marathon alleges that under certain provisions of the Unit Operating Agreement[2] it was only required to pay the "federal" portion of the assessment. Marathon further contends it was not obligated to pay royalties for periods prior to 1982 since such assessments are barred by the statute of limitations. Marathon filed suit in this court August 4, 1988.

## DISCUSSION

On October 3, 1988, defendant filed its motion to dismiss or in the alternative, to transfer. At the outset, it is important to note that defendant does not question the court's subject matter jurisdiction over Marathon's claim for a refund of monies already paid.[3] Rather the motion raises several issues directed at other aspects of the complaint. Defendant first contends the other counts of the complaint should be

dismissed for want of subject matter jurisdiction to the extent they address the issue of royalties owed to CIRI, since only the Government can properly be the subject of a claim in this court. Defendant also asserts in its supporting brief that the portion of Count I seeking "consequential damages" should be dismissed for failure to state a claim. Defendant next contends that Counts II, III, IV, V, and VIII should be dismissed for want of subject matter jurisdiction to the extent they seek declaratory and injunctive relief. Finally, defendant contends that Counts VI and VII should be dismissed for failure to state a claim on which relief may be granted.

In addition, defendant argues that the entire claim should be dismissed or transferred under the doctrine of comity to the United States District Court for the District of Alaska. Plaintiff alleges in this regard that the present case is subsumed by *Marathon Oil Co. v. United States*, No. A83–208 Civil, currently pending in that court. For the reasons that follow, the court declines transfer but grants in part the motion to dismiss.

### A. Subject Matter Jurisdiction

Plaintiff's complaint alleges generally that the SRRG royalty demand was a breach of the subject leases contrary to statute and regulation. The complaint seeks monetary relief and, as discussed below, injunctive relief. Marathon challenges the actions of the MMS, an agency of DOI, and names a single defendant, the United States. One basis for Marathon's Tucker Act claim is the subject leases in the Kenai Unit. Marathon alleges that MMS' order violates, *inter alia*, express

**2.** Unit Agreement for the Development and Operation of the Kenai Unit Area, Third Judicial Division, State of Alaska, No. 14–08–001–6367, May 1, 1959. The agreement contains various provisions relating to the operation and development of the field. The provision on which Marathon bases its partial payment is No. 28, "Loss of Title."

**3.** CIRI as intervenor filed a brief supporting defendant's motion which essentially paralleled the Government's brief. CIRI's brief did not,

however, concede that this court had jurisdiction over the refund claim, and counsel for CIRI asserted at oral argument that the court did not have jurisdiction over the claim because the refund claim constituted "specific relief" outside the jurisdiction of this court under the rationale of *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). This argument is without merit. *See* discussion of jurisdiction and comity, *infra*.

terms of the lease agreements and it seeks money damages.

 It is clear this court has subject matter jurisdiction to the extent Marathon seeks a refund of the approximately $1,700,000 paid to MMS and any additional damages to which it may be entitled arising out of an asserted breach of contract.

> This court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to render judgment on claims for money arising out of a contract with the United States, or under a statute or regulation requiring, or fairly interpreted to require; the payment of money.

*Rogers v. United States,* 14 Cl.Ct. 39, 44 (1987) (citing *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967)), *aff'd,* 861 F.2d 729 (Fed.Cir.1988). Having alleged breach of contract, Marathon has sufficiently invoked our jurisdiction. *Swartz v. United States,* 14 Cl.Ct. 570, 576 (1988); *see also Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 572 F.2d 786 (1978) (jurisdiction exercised over claims arising out of federal offshore oil and gas leases on the basis of breach of contract).

Another basis for plaintiff's Tucker Act claim is 43 U.S.C. § 1734(c) (1982), which provides:

> In any case where it shall appear to the satisfaction of the Secretary that any person has made a payment under any statute relating to the sale, lease, use, or other disposition of public lands which is not required or is in excess of the amount required by applicable law and the regulations issued by the Secretary, the Secretary, upon application or otherwise, may cause a refund to be made from applicable funds.

Our predecessor court has held that this statute allowed it to exercise jurisdiction over a similar claim for refund of royalties. *See Foote Mineral Co. v. United States,* 228 Ct.Cl. 230, 233, 654 F.2d 81, 84–85 (1981) (citing *United States v. Laughlin,* 249 U.S. 440, 442–43, 39 S.Ct. 340, 341, 63 L.Ed. 696 (1919)); *see also S & G Excavating, Inc. v. United States,* 15 Cl.Ct. 157 (1988) (refund claim in a mining context). The court thus has jurisdiction to hear the refund claim.

### B. CIRI Royalties

Defendant argues in its motion that to the extent Marathon's claims "address the issue of royalties owed to CIRI under the Federal Leases" they must be dismissed since this court's jurisdiction does not generally extend to claims against private parties. Such a ruling would be meaningless, however, as plaintiff's refund claim does not put in issue any royalties paid to CIRI. Its complaint alleges that the monies paid by Marathon to date represent only its obligation to the Government. Marathon is seeking damages from the Government only. While the court is aware of the limitations on its jurisdiction over relief sought against parties other than the United States, *see McPherson v. United States,* 2 Cl.Ct. 670, 673 (1983); *United States v. Sherwood,* 312 U.S. 584, 588, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941), such an issue is not presented by the parts of the complaint over which we have jurisdiction.[4]

Defendant asserts 28 U.S.C. § 1500 (1982)[5] as an additional bar to the portions of the complaint which arguably address Marathon's obligations to CIRI. Section 1500 precludes jurisdiction in this court whenever a plaintiff has the same claim pending in district court. Marathon is a plaintiff in the Alaska suit, and CIRI is a defendant. The Government acknowledges

---

4. The present ruling only applies to the refund claim. It does not apply to plaintiff's Motion for Partial Stay (pending resolution of the dispute) of an Agency Order filed August 4, 1988. If the court were to grant such a motion, it is arguably adjudicating with respect to royalties due CIRI. That relief will be addressed at a later time in the context of Marathon's pending motion.

5. Section 1500 reads in relevant part:

> The United States Claims Court shall not have jurisdiction of any *claim* for or in respect to which *the plaintiff* ... has pending in any court any suit or process against the United States....

28 U.S.C. § 1500 (1982) (emphasis added).

that the complaint in that case does not raise the question of SRRG royalties, but it points to a counterclaim by CIRI that arguably does. As noted earlier, no royalty refund is sought by Marathon from CIRI in this action. The same claim is therefore not pending and thus the argument fails. Even assuming *arguendo* such a claim were being made here, however, and this court could exercise jurisdiction over it, the section 1500 argument would fail.

By its terms section 1500 only prohibits prosecution of the same claim against the United States by a plaintiff in two courts. The CIRI counterclaim in the Alaska suit alleges that Marathon has failed to meet its royalty obligations under the Tokyo Electric Liquified Natural Gas ("LNG") contracts and "other gas produced by Marathon pursuant to the working interest in the Federal and State leases...." Invocation of section 1500 based on a counterclaim against the plaintiff, a private party, in another action by the third party in this action is neither mandated by the language of that section nor within its purposes. Section 1500 was adopted to "prevent the prosecution at the same time of two suits *against the Government for the same cause of action.*" *Keene Corp. v. United States*, 12 Cl.Ct. 197, 206 (1987) (emphasis added) (quoting *Matson Navigation Co. v. United States*, 284 U.S. 352, 355–56, 52 S.Ct. 162, 164, 76 L.Ed. 336 (1932)), *aff'd sub nom. Johns–Manville Corp. v. United States*, 855 F.2d 1556 (Fed.Cir.1988). None of Marathon's present claims for refund are pending against the United States in another court and the section is inapplicable. Defendant asserts, with no support, that *Johns–Manville* expands the scope of section 1500 to reach counterclaims against parties other than the United States. The court disagrees. *Johns–Manville* addressed indemnity claims brought by the plaintiff in district courts *against the United States*. The relevant issue presented was the applicability of section 1500 where the claims against the United States arose from the same set of operative facts but were based on different legal theories. *See Johns–Manville*, 855 F.2d at 1559. That is not the issue here.

Furthermore, speculation of CIRI counsel notwithstanding, all that presently appears of record in the district court action to shed light on this question is a "MINUTE ORDER FROM CHAMBERS" dated April 27, 1987. It states: "The only remaining issues for determination in this case concern judicial review, pursuant to the [Administrative Procedure Act] APA, of administrative agency action to determine the amount of royalties owed defendants from Marathon's Kenai field production of *natural gas supplied to the LNG plant*" (emphasis added). Thus, even assuming section 1500 could be strained to apply to a counterclaim by and against a private party, the district court has, at least for the present, indicated that it does not view the SRRG royalty claim as pending before it. *See also* discussion of comity, *infra.*[6]

## C. Consequential Damages

■ Defendant asserts that that portion of Count I in which Marathon seeks lost profits for breach of contract should be dismissed for failure to state a claim upon which relief can be granted. Defendant characterizes these as consequential damages and states they are not recoverable, citing *DeBarros v. United States*, 5 Cl.Ct. 391, 395 (1984). While defendant is correct as a matter of law that consequential dam-

**6.** On January 30, 1989, plaintiff filed a Motion for Leave to Supplement Plaintiff's Opposition to Defendant's Motion to Dismiss. Marathon offered the affidavit of George H. Rothchild, Jr., describing events at a recent status conference in the case of *Marathon Oil Company v. United States*, No. A 83–208 Civil (D. Alaska). Defendant responded February 13 with the declaration of Michael W. Reed, an attorney with the Land and Natural Resources Division of the Department of Justice who was present at the conference. CIRI also responded on February 13 with the affidavit of Mark Rinder, co-counsel for CIRI, another attendee at the conference. Inasmuch as the district court's view regarding the status of SRRG valuation in that case was relevant to our determination of the comity issue here, *see* discussion of comity, *infra*, pp. 340 et seq., the motion was allowed and the materials were considered. However, upon review, the proffered affidavits shed no light on the district court's position.

ages cannot be recovered and that lost profits are frequently rejected on that basis, defendant's characterization of the lost profits as "consequential" is not dispositive. The issue is whether the damages are the "natural and probable consequences of the breach" or whether they are too remote and speculative to be recoverable. *Ramsey v. United States*, 121 Ct.Cl. 426, 433, 101 F.Supp. 353, 357 (1951), *cert. denied*, 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952). The court cannot conclude, in the context of the present motion, that no set of facts could be shown which would entitle Marathon to relief. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). This ground of the motion is thus denied without prejudice.

### D. Counts II, III, IV, V, and VIII

Defendant argues that "[t]he injunctive and declaratory relief sought by Marathon in Counts II, III, IV, V, and VIII is not necessary to this court's ruling on Marathon's claim for refund of royalties paid. Those counts address portions of Interior's demand which Marathon has refused to pay." Thus, defendant argues these counts should be dismissed, because declaratory or injunctive relief is outside the court's jurisdiction, except as specifically provided by statute. *See United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). The court is sympathetic to defendant's efforts to identify and focus on the specific relief sought by Marathon on a count by count basis. The various counts do not lend themselves to this treatment, however. Some do not clearly identify a discrete theory of recovery or type of relief. It is in this light that we consider the individual counts.

### 1. *Counts II, III, V, and VIII*

Counts II, III, V, and VIII of the complaint plead alternative legal theories but contain no prayer for relief. Thus defendant's argument is inapposite as applied specifically to these counts. Count II alleges that the MMS order is "arbitrary,

unsupported by evidence and not in accord with law," the leases, and federal regulations. Count III simply challenges that portion of MMS' royalty calculation that constitutes interest; alleging that charging back interest violates the terms of the leases. Similarly, Count V pleads an alternative basis for a portion of its refund claim founded on the concept of accord and satisfaction. Count VIII asserts that MMS' order was unlawful in that MMS waived administration of the leases prior to issuing the order.

None of these items contain a specific prayer for injunctive relief. The gravamen of defendant's argument is that to the extent these claims seek consideration by the court of some portion of the money requested by MMS that has not been paid by Marathon they seek a declaratory judgment. That is correct. If the court accepted plaintiff's analysis and upheld its view of the facts, *relief would have to be focused on amounts actually paid*. The legal theories raised in Counts II, III, V, and VIII do have relevance, nevertheless, to the amount that was actually paid and over which the court does have jurisdiction. They will therefore not be dismissed.

### 2. *Count IV*

■ Count IV challenges that portion of the royalty demand that relates to production from January 1, 1977 to approximately July 1982. The complaint alleges this portion of the order is beyond the period of limitations. The infirmity in this count, however, is that Marathon specifically chose not to pay any amounts that it contends were beyond the limitation period. Since Marathon has not paid that portion of the royalty contested in Count IV, it is in effect seeking declaratory relief only, and the claim falls outside this court's jurisdiction. *See United States v. King*, 395 U.S. at 3, 89 S.Ct. at 1502. Count IV is thus dismissed.

### E. Counts VI and VII

Defendant argues that Counts VI and VII should be dismissed for failure to state a claim on which relief can be granted.

### 1. *Count VI*

■ The claim stated by Count VI is somewhat difficult in terms of taxonomy, but amounts, according to Marathon's brief in opposition to the present motion, to a claim of a regulatory taking of plaintiff's property. Plaintiff states that "MMS' demands are confiscatory and take Marathon's property without due process of law or just compensation." While lawful regulation by the Government can constitute an exercise of eminent domain,[7] it is the court's understanding that plaintiff is not contending in this count that the MMS order was lawful and itself constituted a taking, but that since the order was unlawful and will have to be overturned, plaintiff will suffer a taking because it would have unnecessarily paid royalties and would have lost the time value of money. This seems to be the meaning of paragraphs thirty-six and thirty-eight of the complaint and this understanding was borne out by counsel's explanation during oral argument.

A motion for failure to state a claim under 12(b)(4) will succeed only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Defendant initially argued that Count VI failed, because in order to state a "ripe" takings claim, Marathon has to assume that "the Government's administrative action conformed to applicable law and that the administrative decision was proper," something plaintiff has heretofore not conceded. If the order was unlawful, on the other hand, plaintiff's rights would be controlled by the lease agreements and regulations. As explained above, however, it is the court's understanding that the plaintiff's real argument is not with respect to the principal paid in, but with its inability to collect interest in the event the order is overturned.

Under similar circumstances, our predecessor court held that a claim of taking of a federal leasehold interest was not cognizable. For example, in *J.J. Henry Co. v. United States*, 188 Ct.Cl. 39, 411 F.2d 1246 (1969), the Court of Claims stated:

> The clear thrust of the authorities [regarding taking claims] is that where the government possesses property under the color of legal right, as by an express contract, there is seldom a taking in violation of the fifth amendment. The amendment has limited application to the relative rights in property of parties litigant which have been voluntarily created by contract.

*Id.* 188 Ct.Cl. at 46, 411 F.2d at 1249 (citing *Consolidation Coal Co. v. United States*, 60 Ct.Cl. 608 (1925), appeal dismissed, 270 U.S. 664, 46 S.Ct. 204, 70 L.Ed. 788 (1926); *Klebe v. United States*, 57 Ct.Cl. 160 (1922), aff'd, 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244 (1923)).

The Court of Claims further applied this analysis in a case similar to the one at bar, *Sun Oil Co.*, 215 Ct.Cl. 716, 572 F.2d 786 (1978). *Sun Oil* involved oil and gas leases granted by DOI under the Outer Continental Shelf Lands Act, 67 Stat. 462 (1953), 43 U.S.C. §§ 1331–43 (1970). Plaintiff alleged there that the Secretary's denial of a permit to install a drilling platform constituted a partial taking of its leasehold rights. The following analysis is directly applicable here:

> It is established that not every deprivation of use, possession, or control of property is a taking. One must look to the character and extent of any interference with property rights whenever a taking claim is asserted. *Finks v. United States*, 184 Ct.Cl. 480, 489, 395 F.2d 999, 1004, cert. denied, 393 U.S. 960, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968); *see generally* 2 Nichol's Eminent Domain, § 6.1 (rev. 3d ed. 1976). More importantly, the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily

---

**7.** *See Florida Rock Industries, Inc. v. United States*, 791 F.2d 893, 900 (Fed.Cir.1986), cert. denied, 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987).

created by contract. *See J.J. Henry Co. v. United States,* 188 Ct.Cl. 39, 46, 411 F.2d 1246, 1249 (1969). In such instances interference with such contractual rights generally gives rise to a breach claim not a taking claim. Plaintiffs and defendant entered into a lease agreement which set forth the rights and obligations of the parties conditioned only by the OCSL Act and implementing regulations. It has been said that when defendant "comes down from its position of sovereignty and enters the domain of commerce, it submits itself to the same laws that govern individuals there." *Cooke v. United States,* 91 U.S. 389, 398, 23 L.Ed. 237 (1875); *see also Perry v. United States,* 294 U.S. 330, 352, 55 S.Ct. 432, 435, 79 L.Ed. 912 (1935). Defendant's lease operations in the Channel therefore, more properly, represent activity by it in a proprietary capacity rather than a sovereign capacity. Accordingly, under the lease contract with plaintiffs, defendant obtained certain rights and incurred certain responsibilities as did plaintiffs. Remedies for violation of any of their lease rights by plaintiffs must be directed at defendant in its proprietary capacity and not in its sovereign capacity.

... The interferences with plaintiffs' lease rights were grounded on matters that ... bespoke an effort to operate within the framework of the lease and applicable regulations, not to take plaintiffs' property rights. If defendant's interferences were unjustified or unreasonable, plaintiffs' rights emanate from the lease agreement, not the Fifth Amendment.

*Sun Oil,* 215 Ct.Cl. at 769–70, 572 F.2d at 818.

This rationale is directly applicable here. The court holds that paragraphs thirty-six and thirty-eight do not state a claim upon which relief may be granted, since plaintiff's rights, if any, are circumscribed by the lease and regulations. Accordingly, those two paragraphs are dismissed.[8]

*2. Count VII*

Defendant argues that Count VII represents a claim for relief based on the due process clause of the Constitution. In its motion, it argues that this count failed to state a claim upon which relief can be granted. In its supporting brief, however, its argument relates to this court's subject matter jurisdiction, and is thus considered pursuant to RUSCC 12(b)(1).

Count VII incorporates allegations in previous counts and offers six additional paragraphs, relating to CIRI's participation in the agency adjudication of the royalty issue. Paragraph forty-six makes allegations regarding denial of substantive review by an arbiter and recites departmental regulations alleged to have been breached by this process. Paragraph forty-seven cites other defects, such as, failure to comply with regulations, and in part specifies: "MMS unlawfully and arbitrarily, violated the terms of the Subject Leases and denied Marathon the due process to which it is constitutionally entitled."

Defendant essentially argues that to the extent Count VII represents a claim for money based upon the due process clause of the Constitution it falls outside this court's jurisdiction. Defendant's point is well taken. The due process clause does not mandate the payment of money and thus does not provide an independent basis for money damages in this court. *Alabama Hosp. Ass'n v. United States,* 228 Ct.Cl. 176, 180, 656 F.2d 606, 609 (1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). Plaintiff concedes this point. In its opposition to defendant's motion, however, plaintiff characterizes this language as an additional "basis for the invalidity of defendant's Order under which Marathon has paid nearly two million dollars." The court accepts the language of Count VII as simply argument regarding the lawfulness of defendant's action presuming the court reaches that issue on an independent jurisdictional basis as

---

8. The other paragraphs of Count VI are not dismissed to the extent they are incorporated in

remaining counts based on the Tucker Act.

discussed *supra.* As the Court of Claims went on to point out in *Alabama Hospital,* assuming there is an independent jurisdictional basis for a money claim, the fact that the plaintiff must make a constitutional argument to prevail does not remove it from Tucker Act jurisdiction. *Id.* 228 Ct.Cl. at 181, 656 F.2d at 610. Defendant's motion is denied as to this count.

### F. Comity

 Defendant argues that this case should be dismissed or in the alternative transferred to the district court pursuant to the doctrine of comity. Comity is an equitable doctrine, intended to promote judicial efficiency. It applies where the "same parties and issues are before two or more courts with concurrent jurisdiction." *Keene Corp.,* 12 Cl.Ct. at 213 n. 10 (citing *Great Northern Ry. v. National RR. Adjustment Bd.,* 422 F.2d 1187 (7th Cir.1970)). Where these conditions are met, the court hearing the second filed action can, within the exercise of its discretion, dismiss in favor of the first. *See generally id.; William C. Haas Realty Management, Inc. v. United States,* 3 Cl.Ct. 231, 234 (1983) (citing *Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 394, 343 F.2d 943, 946 (1965), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966)). Defendant's comity argument is without merit, however, since the essential elements of the doctrine are not present here.

Defendant relies on the following language in CIRI's counterclaim in the Alaska case to support the assertion that the SRRG issue is before the district court:

> From the date of CIRI's entitlement under the Leases to the present, Marathon has failed to satisfy its royalty payment obligations to CIRI under the Federal and State Leases and the applicable Oil and Gas Operating Regulations with respect to gas sold under the Tokyo Electric/Tokyo Gas contract *and other gas produced by Marathon pursuant to the working interest in the Federal and State leases....*

From this, defendant concludes that "CIRI has asked the district court to order an accounting of all gas produced and disposed of by Marathon from the Federal and CIRI Leases and to order Marathon to pay royalties based on that accounting."

While the language of the counterclaim can be construed to reach the issue of SRRG valuation, the district court pleadings and materials called to this court's attention suggest the district court has construed the pleadings to exclude SRRG. The district court complaint challenges valuation of LNG, not SRRG. The counterclaim focuses almost exclusively on valuation of LNG. Further, the counterclaim was filed in 1983, yet no document issued by the district court making reference to SRRG has been produced by defendant. Particularly in light of the "MINUTE ORDER FROM CHAMBERS," issued in 1987, *see supra* p. 336, which explicitly limits remaining issues in that case to those related to "natural gas supplied to the LNG plant," it is impossible for this court to conclude, at least for the present, that the SRRG issue is "before" the district court.[9]

It is also less than clear that defendant is correct in its assertion that *Bowen v. Massachusetts,* — U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), recognizes concurrent jurisdiction in the district court with respect to Marathon's refund claim. In *Bowen,* the Supreme Court held that a district court, under the APA, 5 U.S.C. § 702, has authority to review an order of the Secretary of Health and Human Services that refuses to reimburse a state for a particular category of expenditure under

---

**9.** Even assuming *arguendo* the counterclaim was construed to include SRRG, this court is not convinced it raises the "same issue" as presented here for purposes of comity. Using an operative facts test, *see Johns Manville Corp. v. United States,* 855 F.2d 1556, 1563 (1988) (defining the term "claim" in 28 U.S.C. § 1500), the counterclaim seeks an accounting from Marathon of gas produced and resultant damages prior to any action by MMS regarding the SRRG; the operative facts would be the production and disposition quantities asserted by Marathon prior to the MMS royalty reassessment. Here, Marathon seeks a refund based on the alleged illegality of MMS' July reassessment. The "issue" raised by CIRI's counterclaim regarding SRRG has arguably been superseded or made moot by the subsequent MMS action.

its Medicaid program. The Government argued there that since the APA's waiver of sovereign immunity was limited to "relief other than money damages," 5 U.S.C. § 702, and reversal of the Secretary's decision would result in the reimbursement of money to the state, exclusive jurisdiction lay in the Claims Court. *Bowen*, 108 S.Ct. at 2730–31. The Court disagreed, holding:

> We agree with the position advanced by the State in its cross-petition [that the district court has jurisdiction] ... for two independent reasons. First, neither of the District Court's orders in this case was a "money judgment," as the Court of Appeals held....

> Second, even if the District Court's orders are construed in part as orders for the payment of money by the Federal Government to the State, such payments are not "money damages".... That is, since the orders are for specific relief (they undo the Secretary's refusal to reimburse the State) rather than for money damages ... they are within the District Court's jurisdiction under § 702's waiver of sovereign immunity.

*Id.* at 2740.

Applying this standard to the case at bar would seem to lead to a contrary result. The Court in *Bowen* stated that the order there "did not purport to be based on a finding that the Federal Government owed Massachusetts that amount, or indeed, any amount of money." *Id.* Marathon's claim here, however, seeks exactly that, an enforceable judgment compelling payment of a particular sum. The first basis for application of *Bowen* would thus not appear to be present.

Under the second prong of the Court's holding, Defendant argues that a refund here would not be "money damages" but rather specific relief and thus within the district court's jurisdiction under section 702. The Supreme Court's analysis in *Bowen* of the nature of relief within the district court's jurisdiction is complex, but seems to amount to a finding that the relief sought in *Bowen* was not within "the ordinary understanding of the term [money damages] as used in the common law for

centuries." *Id.* at 2733. The court further supported its analysis with a finding that the legislative history of the APA suggests that " 'grant-in-aid' programs were intended by congress to be included in section 702's waiver of sovereign immunity." *Id.* at 2734. This case is distinct from *Bowen* under such an analysis.

The types of governmental activities as to which Congress anticipated a waiver of immunity under the APA were expressly mentioned in the legislative history of section 702: "agricultural regulations, governmental employment, tax investigations, postal-rate matters, administration of labor legislation, control of subversive activities, food and drug regulation, and administration of Federal grant-in-aid programs." *See* H.R.Rep. No. 1656, 94th Cong., 2d Sess. 9, 1976 U.S.Code Cong. & Admin. News, 6121, 6129. There is certainly no mention of contractual undertakings in general or lease agreements between the United States and private parties for oil and gas production in particular. *See id.* As recently noted by the Supreme Court in a different context: "[u]nlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Bennett v. Kentucky Dep't of Education*, 470 U.S. 656, 669, 105 S.Ct. 1544, 1552, 84 L.Ed.2d 590 (1985). This characterization aptly distinguishes those areas expressly mentioned in the legislative history of section 702—areas that are highly regulated and policy intensive—from those at issue here, essentially contractual undertakings by the United States Government in a proprietary capacity. *Compare Sun Oil Co.* 215 Ct.Cl. at 770, 572 F.2d at 818, *with Bowen*, 108 S.Ct. at 2739 n. 46.

Next, the relief sought by Marathon here is better characterized, at least in part, as classic "money damages." The *Bowen* Court relied on Judge Bork's opinion in *Maryland Dep't of Human Resour. v. Dep't of H.H.S.*, 763 F.2d 1441, 1446 (D.C. Cir.1985), quoting as follows: "[i]n the present case, Maryland is seeking funds to which a statute allegedly entitles it, rather than money in compensation.... The fact

that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages." *Bowen,* 108 S.Ct. at 2732–33. The relief sought in the instant case is distinguishable where, at least in part, it is more appropriately defined as compensation for breach of contract. The *Bowen* Court defined money damages as "intended to provide a victim with monetary compensation for an injury to ... property." *Id.* at 2732. Under Marathon's breach of contract theory, entitlement to an award, if it exists, is not created by statute, as was the entitlement in *Bowen,* but by enforcement of the underlying lease agreement. The money awarded would be compensation for the Government's failure to act in accordance with the agreements. *See Adams v. Lindblad Travel, Inc.,* 730 F.2d 89, 92 (2nd Cir.1984) (citing *Perma Research & Development v. Singer Co.,* 542 F.2d 111, 116 (2d Cir.1976), *cert. denied,* 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598, for the proposition that contract damages consist of the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract").[10]

Moreover, our finding here, pursuant to the analysis in *Foote Mineral Co.,* 228 Ct.Cl. 230, 654 F.2d 81, that 43 U.S.C. § 1734(c) is money mandating for purposes of a claim under the Tucker Act also suggests that the nature of any resultant relief would be money damages. As the Supreme Court held in *United States v. Mitchell,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), a Tucker Act claimant "must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as *mandating compensation by the Federal Government for the damage sustained.'* " *Id.* at 217, 103 S.Ct. at 2968 (quoting *Testan,* 424 U.S. at 400, 96 S.Ct. at 954; *Eastport S.S. Corp.,* 178 Ct.Cl. at 607, 372 F.2d at 1009). Comparing this language to the definition of money damages proffered by *Bowen* suggests that if in fact the underlying statute is "money mandating," the relief provided in such a Tucker Act Claim is properly termed money damages.

This analysis is supported by the opinion of the Court of Appeals for the Fifth Circuit in *Amoco v. Hodel,* 815 F.2d 352 (5th Cir.1987) (finding jurisdiction under the Tucker Act based on a section of the Outer Continental Shelf Lands Act similar to 43 U.S.C. § 1734(c)), *cert. denied,* —— U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988), a fact situation virtually identical to the instant case. *See also Diamond Shamrock Exploration Co. v. Hodel,* 853 F.2d 1159, 1168 (5th Cir.1988) (following *Amoco* ). In *Amoco* the court held that jurisdiction over a refund claim for additional royalties collected by the United States upon subsequent audit lay exclusively in the Claims Court. Defendant argues in its reply brief that *Amoco* was overruled by *Bowen.*[11] Defendant characterizes the holding in *Amoco* as follows: "where a litigant's true objective is to obtain money from the federal government, such a claim, assuming it could be adjudicated at all, could be adjudicated only in the Claims Court." Defendant's Submission of Additional Authority at 3 (citing *Amoco,* 815 F.2d at 361–67). Defendant argues that

---

**10.** A comparison of the relief sought here with those examples cited by the *Bowen* Court as awards of money which are not damages—*First National State Bank v. Commonwealth Federal Savings & Loan Association,* 610 F.2d 164, 171 (3d Cir.1979) (specific performance of contract to borrow money); *Crouch v. Crouch,* 566 F.2d 486, 488 (5th Cir.1978) (contrasting lump-sum damages for breach of promise to pay monthly support payments with an order decreeing specific performance as to future installments); *Joyce v. Davis,* 539 F.2d 1262, 1265 (10th Cir. 1976) (specific performance of a promise to pay money bonus under a royalty contract)—*Bow-*

*en,* 108 S.Ct. at 2732 (quoting *Maryland Dep't of Human Resources v. Dep't of HHS,* 763 F.2d 1441, 1446 (1985)), suggests that the "money damage" characterization here is more apt.

**11.** In its post-argument memorandum in *Diamond Shamrock Exploration Co. v. Hodel,* 853 F.2d 1159 (5th Cir.1988), which was apparently lost in transmittal to the Fifth Circuit, but is offered here, the Government made the same argument. *Certiorari* was denied in *Amoco* the day after the decision in *Bowen.*

since *Bowen* allows the district court to award monetary relief other than traditional money damages it is inconsistent with *Amoco*. The problem with defendant's argument is that it misconstrues the holding of *Amoco*. *Amoco* does not stand for the proposition that any claim "to obtain money" must be brought in the Claims Court. Rather it holds that when a claim amounts to one for money and is properly asserted under the Tucker Act, i.e., founded on a statute which "can fairly be interpreted as mandating compensation by the federal government for the damage sustained," *Amoco*, 815 F.2d at 360, then the money claim falls outside the jurisdiction of the district court. This is entirely consistent with the holding in *Bowen*:

> "To determine whether one may bring, pursuant to Tucker Act jurisdiction, a "claim against the United States founded ... upon ... any Act of Congress," [28 U.S.C. 1491] "one must always ask ... whether the ... legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." (citations omitted) ... These laws attempt to compensate a particular class of persons for past injuries or labors. In contrast, the statutory mandate of a federal grant-in-aid program directs the Secretary to pay money to the State, not as compensation for a past wrong, but to subsidize future state expenditures." *See supra*, 108 S.Ct. at 2735–2736; *see also United States v. Mottaz*, 476 U.S. 834, 850–51, 106 S.Ct. 2224, 2234, 90 L.Ed.2d 841 (1986) (suit to force Government to buy property interests not viewed as *"representing damages for the Government's past acts, the essence of a Tucker Act claim for monetary relief"*).

*Bowen*, 108 S.Ct. at 2738 n. 42 (emphasis added).[12] This language strongly suggests that relief in such an action would fall within the *Bowen* definition of "money damages," *see id.* at 2731–32, and thus, would fall outside the jurisdiction of the district court under the APA. *See id.* at 2740; 5 U.S.C. § 702.

Fortunately it is not necessary to resolve this question here, it is only relevant insofar as comity is a principle imbued with discretion. *See Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951). It is thus sufficient for purposes of the motion to transfer to note the presence of significant uncertainty as to whether the district court could exercise complete jurisdiction over the refund claim.

The court recognizes that all of the parties to the present action are in fact currently litigating a different royalty dispute in Alaska, and that prior to payment under the MMS order plaintiff could have fashioned a request for injunctive relief in regard to the SRRG royalty reassessment which could have been joined to that action. It is not up to the court, however, to instruct plaintiff on how to cast its claim or what forum to choose. Moreover, although the wisdom of forcing a litigant into two fora to ensure complete relief arising out of the same circumstances may be subject to inquiry (injunctive relief in district

---

**12.** District court jurisdiction over the refund claim may alternatively be excluded by 5 U.S.C. § 704 (1982). Defendant argues that Marathon seeks only the return of specific funds wrongfully paid and that this is specific relief, citing *Bowen*, 108 S.Ct. at 2733–34. First, *Bowen* simply does not support this general statement. *See id.* Further, assuming *arguendo* such a characterization is apt for a refund claim, the Court in *Bowen* stated:

> There are, of course, many statutory actions over which the Claims Court has jurisdiction that enforce a statutory mandate for the payment of money rather than obtain compensation for the Government's failure to so pay .... to the extent that suits to enforce these statutes can be considered suits for specific relief ... suits under the Tucker Act in the Claims Court offer precisely the sort of "special and adequate review procedures" that § 704 requires to direct litigation away from the district courts.

*Id.* at 2735 n. 31. The instant case could easily be construed as one to enforce the refund statute asserted by Marathon. Defendant's characterization would thus achieve the same result as classifying the refund as money damages, because section 704 would remove the refund claim from the jurisdiction of the district court under the APA in favor of the "special and adequate review procedures" provided in the Claims Court under the Tucker Act.

courts, money damages in the Claims Court), the fact remains that those distinctions have to be observed until such time as the law is changed.

Consequently, where (1) the "issues" as defined by the operative facts appear not to be the same; (2) it cannot be shown with certainty that the alternative forum considers the claim as pending before it; and (3) there is significant doubt regarding the jurisdiction of the alternative court, application of the doctrine of comity is contrary to its underlying purpose of "wise judicial administration." *See Kerotest Mfg.*, 342 U.S. at 183, 72 S.Ct. at 221; *see also Keene Corp.*, 12 Cl.Ct. at 213 & n. 10 (discussing comity in the context of 28 U.S.C. § 1500); *cf. William C. Haas Realty Management, Inc. v. United States*, 3 Cl.Ct. 231, 234–35 (1983) (holding a dismissal based on the doctrine of comity was inappropriate where jurisdiction was not concurrent and issues were not the same); *State v. Dep't of Health, Education & Welfare*, 480 F.Supp. 929, 932–33 (E.D.N.C.1979) (holding the doctrine of comity has no application where the parties and issues in the two pending suits are different). The court thus declines to dismiss or transfer the case at this time. The court will however, consider a motion to stay, transfer, or dismiss on this basis in the future should the facts demonstrated warrant reconsideration.

## CONCLUSION

Defendant's motion to transfer is denied. The motion to dismiss is granted with respect to Count IV and paragraphs thirty-six and thirty-eight of Count VI, and denied in other respects.